Rheeta STECKER, M.D. *v.* FIRST COMMERCIAL TRUST COMPANY

97-260                                    962 S.W.2d 792

Supreme Court of Arkansas
Opinion delivered February 18, 1998

*Friday, Eldredge & Clark,* by: *Tonia P. Jones,* for appellant.

*Gary Eubanks & Associates,* by: *William Gary Holt* and *James Gerard Schulze,* for appellee.

DAVID NEWBERN, Justice. This is the second appeal concerning the liability of Dr. Rheeta Stecker for the death of her patient, sixteen-month-old Laura Fullbright. First Commercial Trust Company ("First Commercial"), as administrator of the child's estate, sued Dr. Stecker for medical malpractice and for failure to report under the child-abuse-reporting statute, Ark. Code Ann. §§ 12-12-501 through 12-12-518 (Repl. 1995 and Supp. 1997). In addition to the action on behalf of the estate, First Commercial sued on behalf of several of Laura Fullbright's relatives, individually. It was alleged that Dr. Stecker's failure to report evidence of physical abuse of the child resulted in the child's death. In addition to Dr. Stecker, Mary Ellen Robbins, the child's mother, and Joseph Rank who lived with Ms. Robbins and her child and who was convicted of murdering the child, *see Rank v. State,* 318 Ark. 109, 883 S.W.2d 843 (1994), were named as defendants.

In the first trial, Ms. Robbins was found not liable. Mr. Rank was found liable for damages to Laura Fullbright's half-brother, but no damages were awarded to the estate. Dr. Stecker was found not liable for civil penalties prescribed under the child-abuse-reporting statute, and she was awarded a directed verdict on the medical malpractice claim because the only medical expert witness sought to be presented by First Commercial was found not to be qualified to testify as to the standard of medical care concerning child abuse in Hot Springs. We reversed and remanded for a new trial on the medical malpractice claim, holding it was error to have excluded the testimony of Dr. Frederick Epstein, the expert medical witness whose testimony First Commercial sought to introduce on behalf of the estate. *First Commercial Trust Co. v. Rank,* 323 Ark. 390, 396, 915 S.W.2d 262, 264 (1996).

In the second trial, a jury verdict resulted in a judgment against Dr. Stecker. She argues three points on appeal. First, she contends the doctrine of law of the case precludes any recovery against her because the estate recovered no damages in the first trial. Second, she contends her motion for a directed verdict should have been granted because there was insufficient evidence that her failure to report the child's condition resulted in the death. Finally, she argues her motion for a mistrial should have been granted because of improper closing argument by counsel for First Commercial. We affirm the judgment.

At the second trial, there was evidence from which the jury could have concluded the following. Dr. Stecker, a family practitioner, treated Laura Fullbright on several occasions prior to the child's death which occurred on September 12, 1992. On June 12, 1992, Dr. Stecker saw Laura, who was 12 1/2 months old, for a "well baby check-up." Laura was brought to Dr. Stecker by Ms. Robbins, a pharmacist, whom Dr. Stecker regarded as a friend and colleague. She noticed a visible angulation of one of the baby's arms, and she pointed the problem out to Ms. Robbins and to Mr. Rank. An x-ray showed the fracture of two bones in the child's left forearm. Ms. Robbins and Mr. Rank indicated that they did not know that there was a problem. Dr. Stecker became concerned about the possibility of neglect or abuse. Dr. Stecker referred Laura to Dr. Robert Olive, an orthopedist. After seeing the x-rays as well as the child and her mother, Dr. Olive wrote Dr. Stecker that he did not think that there was any evidence of neglect on the part of the parents.

The letter from Dr. Olive did not totally alleviate Dr. Stecker's suspicions of possible abuse; however, she did not confront Ms. Robbins or Mr. Rank about her suspicions, contact the baby's father, Jim Fullbright, about her suspicions, or report her suspicions to any law enforcement agency. Ms. Robbins did not tell Jim Fullbright about the broken arm because she knew that he would "raise a fuss about it."

On July 9, Dr. Stecker again examined Laura. Her notes reflect that the family had observed that the child was "wobbly" and running into things. Dr. Stecker found that she was better

and diagnosed the problem as ataxia or dizziness and concluded that the child had been drinking too much juice. However, she also recognized that the symptoms were consistent with other possibilities, including head trauma.

On July 21, Laura was brought to the clinic with both eyelids swollen, and Ms. Robbins reported that the bruises were a result of the child falling down several stairs. Dr. Stecker was not present and Dr. Stecker's husband, Dr. Elton Stecker, saw the baby. Dr. Elton Stecker's nurse recorded that the child had been nauseated the previous day and had vomited that morning. When she awoke, there was swelling on the right side of the head in the temple area and over the right eye.

On July 22, Dr. Stecker again saw Laura, and she read the record of the July 21 visit. At this time, the child's eyelids were swollen, and Ms. Robbins reported that the child had fallen down several stairs. Ms. Robbins wondered if the swelling of the upper lids could be the result of an allergy or a spider bite, and she stated that Laura had had watery nasal discharge which she felt was due to an allergy. Dr. Stecker wondered why there were new falls when child had been seen in the clinic the day before. Dr. Stecker discussed the possibility of abuse with Ms. Robbins. Ms. Robbins was adamant that abuse was highly unlikely. She stated that her five-year-old son carried Laura around and that he might have dropped her. She also told Dr. Stecker that her boyfriend did not have a temper. Dr. Stecker again considered reporting her suspicions of child abuse to the authorities; however, she did not. She made a conscious decision that there was not enough evidence to put the family in jeopardy of an investigation.

In August, there was an adult guest in Ms. Robbins's home, and nothing happened to the child while he was present. On September 12, 1991, Ms. Robbins returned home from work and found Laura, whom she had left in the care of Mr. Rank, unconscious. She took the child to St. Joseph's Regional Medical Center in Hot Springs. Laura was transported to Arkansas Children's Hospital in Little Rock, where she was later pronounced dead. The medical examiner determined that the cause of death was homicide.

## 1. Law of the case

Dr. Stecker filed a pretrial motion to dismiss for lack of a real party in interest. She argued that the jury's failure to award damages to the estate at the first trial constituted law of the case precluding it from seeking damages upon retrial.

Following the jury verdict, Dr. Stecker moved for judgment notwithstanding the verdict, or, in the alternative, a new trial on several grounds. In the motion, Dr. Stecker argued that the issue of the damages sustained by the estate of Laura Fullbright should not have been submitted to the jury because the verdict from the first trial which awarded the estate no damages was not appealed; thus, the verdict was the law of the case. The motion was denied.

Dr. Stecker, citing *Alexander v. Chapman*, 299 Ark. 126, 771 S.W.2d 744 (1989), argues that the Trial Court erred in submitting the issue of damages to the jury because the estate failed to appeal from the first jury's finding that it had suffered no damages; thus, it is contended, the jury's finding became the law of the case. She further contends that because the damages for wrongful death of a minor as outlined in AMI 2216 are not dependent on the particular tortfeasor or the nature of the conduct which caused the death, those damages are the same whether the death is the result of intentional conduct, common-law negligence, or medical negligence.

■■ In *Alexander v. Chapman, supra,* we recognized that "[t]he general rule is that, where the pleadings and issues are substantially the same, all questions which were actually presented or which could have been presented in the first appeal are barred in the second appeal." *See also McDonald's Corporation v. Hawkins,* 319 Ark. 1, 888 S.W.2d 649 (1994). The point here is that there could have been no damages issue in the first trial and appeal of the malpractice claim against Dr. Stecker. The jury was not given an opportunity to consider the issue because a verdict had been directed in Dr. Stecker's favor. The rationale of the cited cases does not apply.

■ With respect to AMI 2216, we need only say that the instruction was meaningless in this case because the first jury had

no occasion to consider damages resulting from the medical malpractice claim against Dr. Stecker.

### 2. Proximate cause

Arkansas Code Ann. § 16-114-206(a) (1987) provides:

> In any action for medical injury, the plaintiff shall have the burden of proving:
> (1)   The degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he practices or in a similar locality;
> (2)   That the medical care provider failed to act in accordance with that standard; and
> *(3)   That as a proximate result thereof, the injured person suffered injuries which would not otherwise have occurred.*

(Emphasis added.)

Causation is ordinarily a fact question for the jury to decide. *First Commercial Trust Co. v. Rank, supra.* The law requires more than a mere possibility that certain injuries resulted from negligence; a reasonable probability must be established. *Davis v. Kemp,* 252 Ark. 925, 481 S.W.2d 712 (1972). A plaintiff's proof on the issue of causation must be more than speculation and conjecture. *Hill v. Maxwell,* 247 Ark. 811, 448 S.W.2d 9 (1969). It must be such that reasonable persons might conclude that it is more probable than not that an event was caused by the defendant. *Id.*

Proximate cause may, however, be shown from circumstantial evidence, and such evidence is sufficient to show proximate cause if the facts proved are of such a nature and are so connected and related to each other that the conclusion may be fairly inferred. *Wheeler v. Bennett,* 312 Ark. 411, 808 S.W.2d 769 (1991). The mere fact that other causes intervene between the original act of negligence and the injury for which recovery is sought is not sufficient to relieve the original actor of liability if the injury is the natural and probable consequence of the original negligent act or omission and is such as might reasonably have been foreseen as probable. *State Farm Mut. Auto. Ins. Co. v. Pharr,* 305 Ark. 459, 808 S.W.2d 769 (1991).

Dr. Lander Smith, a witness presented by Dr. Stecker, testified to his opinion that Dr. Stecker had not violated the standard of care required of a family physician in the circumstances presented. On cross-examination, however, he testified, in part, as follows:

> No, sir, I am not an expert in child abuse. But it is correct that in my schooling as a family practitioner and as an emergency room physician I am taught about things to look for in child abuse. . . . If I have an impression that if someone has abused a child, I certainly would report it. As to whether I would expect the abuser to back off under the bright light of an investigation, I would think so, while there is an investigation hanging over his head. That's why you should report those, because it might save a child's life. More likely than not, I would always hope it would.

Dr. Frederick Epstein, who was presented as First Commercial's witness, testified on cross-examination that in his opinion, "Dr. Stecker should have called Health and Human Services and they would have called the father and everyone else acquainted with this child."

Dr. Stecker argues that the Trial Court erred in denying her motion for a directed verdict because there is no substantial evidence that her conduct was the proximate cause of the death of Laura Fullbright. Dr. Stecker argues that if Dr. Smith's testimony amounts to sufficient evidence of causation, the Administrator has effectively shifted the burden of proof on this element of its cause of action to her. She contends that if it can be presumed that a report of suspected child abuse will more likely than not prevent harm to the victim, she who is allegedly negligent for failing to recognize and report that abuse is put in the position of proving that making such a report would not have made a difference.

■ There is no presumption involved here. Dr. Epstein testified that Dr. Stecker should have called the Department of Human Services, which would then have notified the father and "everyone acquainted with this child." Dr. Smith informed the jury that such a report could have saved the child's life by exposing the abuser. That opinion was buttressed by the evidence that when there was an outside person in Ms. Robbins's home, the

abuse did not occur. Dr. Stecker had the opportunity to rebut that testimony and apparently failed to do so in the eyes of the jury. The issue was one of fact for the jury to decide.

### 3. Closing argument

In her third point on appeal, Dr. Stecker argues that prejudicial error occurred during First Commercial's closing argument when First Commercial wove a "send a message" theme into the argument even though punitive damages were not at issue in the case. Early in First Commercial's closing argument on behalf of Laura Fullbright's estate, it asked the jury not to apply a "weak" or "watered down" standard of care. Counsel for Dr. Stecker objected on the ground that punitive damages had not been sought, and the argument was a "send a message" argument. The Trial Court responded that he would take no action "until it happens." Later, First Commercial's counsel on several occasions referred to protecting "the children" and to protecting "the Lauras of the world." Dr. Stecker's counsel moved for a mistrial, and the motion was denied.

It has indeed been held that an argument having a "send a message" to the community theme may be improper when punitive damages are not sought. *See, e.g., Smith v. Courter,* 531 S.W.2d 743 (Mo. 1976); *Maerks v. Birchansky,* 549 So.2d 199 (Fla. App. 1989). At first blush, the argument made on behalf of Laura Fullbright's estate might seem to have had that as its theme. In response to that contention, however, First Commercial argues that its counsel was addressing the standard of care to be exercised by a physician in circumstances such as those with which Dr. Stecker was presented and not the matter of damages.

We agree with the contention of First Commercial that the opinions of Dr. Epstein and that of Dr. Smith were very much at odds concerning the duty of a physician to report suspected child abuse. Dr. Smith felt a physician should be more than fifty percent certain before making a report. Dr. Epstein opined that any suspicion should be reported so that an objective government agency could make a determination. It is at least plausible that the reference to "the children" had to do with the standard of care to be taken by physicians rather than with a "message" to them.

■ A mistrial is a drastic remedy that should only be used when there has been an error so prejudicial that justice cannot be served by continuing the trial, or when fundamental fairness of the trial itself has been manifestly affected. *Balentine v. Sparkman*, 327 Ark. 180, 937 S.W.2d 647 (1997). The Trial Court has wide discretion in granting or denying a motion for mistrial, and absent an abuse the decision will not be disturbed. *Id.*

■ We hold that, viewing the closing argument in its entirety, the repeated references to protection of "the children" did not necessarily evidence a "send a message" theme when combined with the discussion of the standard of care and the other points made in the closing argument. *See Beis v. Dias*, 859 S.W.2d 835 (Mo. App. S.D. 1993); *Derossett v. Alton and Southern Ry. Co.*, 850 S.W.2d 109 (Mo. App. E.D. 1993).

Affirmed.