## Susan R. HAMILTON  *v.*  Dr. D.B. ALLEN, M.D., Individually and Dr. Ken Taylor, M.D., Individually

CA 06-1051                                                      267 S.W.3d 627

Court of Appeals of Arkansas
Opinion delivered November 7, 2007

*The Law Offices of W. Kelvin Wyrick*, by: *W. Kelvin Wyrick, James E. Keever, M.D., J.D.*, and *Amy Freedman.*

*Friday, Eldredge & Clark, LLP,* by: *Laura Hensley Smith* and *J. Adam Wells,* for appellees.

S AM BIRD, Judge. In this medical-malpractice case Susan R. Hamilton appeals the circuit court's order granting summary judgment in favor of appellees, Dr. D.B. Allen and Dr. Ken Taylor. Hamilton raises four points on appeal: (1) that appellees' motion for summary judgment did not demonstrate a prima facie case and was improperly granted; (2) that the trial court erred in striking her response to appellees' motion for summary judgment on the basis of untimeliness; (3) that the trial court erred in failing to allow her to supplement the affidavit of her expert witness; and (4) that the trial court erred in dismissing her oral motion for a continuance. We find no error by the trial court in granting summary judgment in favor of appellees, and we affirm.

Hamilton underwent gynecological surgery by Dr. Allen on the afternoon of February 10, 2000. Several hours after the surgery Hamilton's blood pressure decreased and her pulse rate increased, suspected to be the result of post-operative, intra-abdominal bleeding. Consequently, exploratory surgery was performed that same evening by Dr. Allen and Dr. Taylor, and two oozing vessels were identified and ligated. A third surgery was required two days later for additional intra-abdominal bleeding: a third bleeding vessel was found and ligated in this surgery, which was performed by Dr. Allen and Dr. Michael Pollock. Hamilton was discharged from the hospital eight days after what had been originally scheduled as a "day surgery." Her allegations of medical negligence regarded Dr. Allen and Dr. Taylor's treatment of her initial post-operative bleeding.

### Procedural History

Before addressing the merits of appellant's argument, we briefly summarize the development of this case before the circuit court. Appellant initially filed suit in February 2002, just before the expiration of the statute of limitations. Appellees took the deposition of Dr. Joseph Hume, who had been identified by appellant as the only medical expert she intended to call as a witness at trial. Appellees filed a motion for summary judgment on January 26, 2005, alleging that Hamilton could not meet her burden of proof through the testimony of her expert witness. At a hearing on February 4, 2005, the trial court treated appellees' motion as a motion *in limine* because it had been filed after a court-imposed

deadline for the filing of dispositive motions. The court denied the motion *in limine,* ruling that Hamilton could call Dr. Hume to testify at trial, that the court would deal at that time with any objections by appellees to Dr. Hume's opinions, and that the court was reserving the right to grant a directed verdict, depending on the evidence presented at trial. The court stated, "So to the extent that the motion for summary judgment can be considered a motion to exclude the testimony of Dr. Hume or some motion *in limine* to that effect as excluding that portion of the testimony, that motion will be denied." On the same day, Hamilton voluntarily non-suited her case as to all defendants.

On July 13, 2005 Hamilton re-filed her complaint against Drs. Allen and Taylor, making essentially the same allegations of negligence on their part as were made in the first suit. After answering and denying all allegations of negligence, appellees filed a motion for summary judgment on October 6, 2005, based upon the same grounds as their motion for summary judgment in the first lawsuit, *i.e.,* that because Dr. Hume's testimony was speculative, it was insufficient as a matter of law to establish the existence of an essential element of her claim of negligence on the part of appellees.

On November 2, 2005 Hamilton filed a paper entitled "Plaintiff's Designation of Expert Witness," which identified Dr. Harold J. Miller as her only expert witness in the case. Attached to the document was Dr. Miller's affidavit: it set forth the standard of care applicable to the surgical procedures performed on Hamilton by appellees, it stated that appellees had deviated from the standard of care, and it described the nature of such deviation. On December 1, 2005 Hamilton filed her response to the motion for summary judgment. She argued, among other things, that appellees' motion was ill-founded to the extent that it relied upon the deposition of Dr. Hume because his deposition was taken in connection with the earlier case that Hamilton had voluntarily non-suited and, therefore, it was not evidence that could be used as a basis for summary judgment in Hamilton's re-filed lawsuit.

Appellees moved to strike Hamilton's response, arguing that its filing was not timely and that, even if timely, Dr. Miller's affidavit did not establish that he was familiar with the applicable standard of care and, like Dr. Hume's testimony, his opinions were based solely upon speculation. Thereafter, Hamilton moved for leave to supplement Dr. Miller's affidavit and appellees responded in opposition to it.

Following a hearing on May 12, 2006, during which Hamilton orally moved that the hearing be continued until after discovery was completed, the trial court announced its findings: that the doctors' motion to strike Hamilton's response to the motion for summary judgment should be granted because the response was not timely filed, that Hamilton's motion to file a supplemental affidavit of Dr. Miller should be denied because the filing of Dr. Miller's initial affidavit was not timely, that Hamilton's oral motion for a continuance should be denied, and that the appellee/doctors' motion for summary judgment should be granted. The court also reiterated that, at the February 2005 hearing on appellees' motion *in limine* in the first case, it had reserved the right to grant a motion for directed verdict by appellees and that "the reason they didn't get their motion for summary judgment is they waited too close to trial to get it heard." The court's decision was memorialized in an order entered on June 1, 2006. Hamilton now appeals, arguing the four points set forth in the first paragraph above.

### Grant of Summary Judgment

Summary judgment is proper when a claiming party fails to show that there is a genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. *Skaggs v. Johnson*, 323 Ark. 320, 915 S.W.2d 253 (1996) (citing Ark. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). Once the moving party has established a prima facie case showing entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Mitchell v. Lincoln*, 366 Ark. 592, 237 S.W.3d 455 (2006). The appellate court determines if summary judgment was appropriate based on whether the evidence presented by the moving party in support of its motion leaves a material fact unanswered. *Id.* The evidence is reviewed in a light most favorable to the party against whom the motion was filed, with all doubts and inferences resolved against the moving party. *Id.*[1]

---

[1] The dissent does not acknowledge that the purpose of summary judgment is to avoid the waste of time, work, and money involved in requiring the trial of a case when a party cannot produce evidence supporting the existence of a fact necessary to establish his claim or defense. *Joey Brown Interest, Inc. v. Merchants Nat'l Bank of Fort Smith*, 284 Ark. 418, 683 S.W.2d 601 (1985). The well-recited standard to be applied in summary-judgment cases is whether there is evidence sufficient to raise a fact issue. *See Wallace v. Broyles*, 331 Ark. 58, 66,

In a medical-malpractice action, the *plaintiff* must prove: (1) the applicable standard of care; (2) that the medical provider failed to act in accordance with that standard; and (3) that such failure was a proximate cause of the plaintiff's injuries. *Webb v. Bouton*, 350 Ark. 254, 264, 85 S.W.3d 885, 891 (2002). A medical-malpractice complaint is subject to a motion for summary judgment when the plaintiff fails to present expert evidence of those three elements and the defending party demonstrates that the plaintiff lacks proof on one or more of these essential elements. *Robbins v. Johnson*, 367 Ark. 506, 241 S.W.3d 747 (2006); *Parkerson v. Arthur*, 83 Ark. App. 240, 125 S.W.3d 825 (2003).[2] Here, Hamilton had the statutory burden of proving these three essential

---

961 S.W.2d 712, 715 (1998) (citing *Caplener v. Bluebonnet Milling Co.*, 322 Ark. 751, 911 S.W.2d 586 (1995)). Rather, the dissenting opinion seems to suggest that even though Hamilton's expert doctor could not, without speculation, testify that the appellee doctors had violated any standard of care, she should, nonetheless, be given a chance to present that proof at trial because the appellees have not, in their motion for summary judgment, presented affirmative proof that they did not violate any standard of care. The dissent's position ignores Ark. Code Ann. § 16-114-206, which places the burden on the plaintiff to produce expert evidence establishing the essential elements of his or her claim, and Ark. R. Civ. P. 56(c), which mandates the grant of summary judgment where the pleadings, discovery, and affidavits, if any, show that there is no genuine issue as to any material fact.

In any case, medical-malpractice or otherwise, summary judgment is appropriate where the moving party demonstrates that the opposing party will be unable, at trial, to prove an essential element of his or her claim. *See Celotex Corp. v. Catrett, supra* (stating that summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial); *Cantrell-Waind & Associates, Inc. v. Guillaume Motorsports, Inc.*, 62 Ark. App. 66, 968 S.W.2d 72 (1998) (stating that the role of summary judgment is simply to decide whether material questions of fact exist to be resolved at trial).

[2] The dissenting judge cites *Wolner v. Bogaev*, 290 Ark. 299, 718 S.W.2d 942 (1986) and *Cash v. Lim*, 322 Ark. 359, 908 S.W.2d 655 (1995) for the proposition that the defendant/movants had to prove the requisite standard of care and that they had conformed to that standard. However, in *Wolner*, unlike the present case, the defendant doctor/movant filed a motion for summary judgment and attached his affidavit and the affidavit of his consulting physician stating merely that the doctor had not been negligent. Describing these affidavits as mere "conclusory assertions," the supreme court stated, "When *that is virtually all the supporting strength of a motion for summary judgment* then the movant has failed to make a prima facie showing of entitlement to summary judgment and the burden of going forward does not shift to the opposing party." 290 Ark. at 303, 718 S.W.2d at 944 (emphasis added). Likewise, in *Cash*, the proof offered by the defendant/movant in support of his motion for summary judgment was found by the supreme court to be lacking where the deposition testimony of the consulting doctor failed to establish a prima facie case of lack of causation.

elements by expert testimony. *See* Ark. Code Ann. § 16-114-206(a) (Repl. 2006); *Dodd v. Sparks Reg'l Med. Ctr.*, 90 Ark. App. 191, 204 S.W.3d 579 (2005).[3]

In order to demonstrate a genuine issue of material fact, the plaintiff's medical expert must state "within a reasonable degree of medical certainty" that the defendant breached the standard of care and that the alleged breach was a proximate cause of the injury. *Mitchell v. Lincoln, supra; Fryar v. Touchstone Physical Therapy, Inc.*, 365 Ark. 295, 229 S.W.3d 7 (2006). A party against whom a claim is asserted "may move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof." Ark. R. Civ. P. 56(c). Burdens of proof for the parties to summary judgment are as follows:

> Rule 56(c) [of the Federal Rules of Civil Procedure] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. . . .

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

Unlike the movant/defendants in *Wolner* and *Cash, supra,* here the movants have established in their motion for summary judgment that the deposition testimony of Hamilton's expert medical witness demonstrated that Hamilton lacked proof on an essential element of her claim because Dr. Hume could not state, without speculating, that a third bleeding site existed during the second surgery that Drs. Allen and Taylor should have discovered. Neither *Wolner* nor *Cash* involved a summary judgment in which the movant demonstrated an inability on the part of the plaintiff to prove one of the essential elements required to be proved in a medical-malpractice case.

[3] However, expert testimony is not required when the asserted negligence lies within the comprehension of a jury of laymen, such as a surgeon's failure to sterilize instruments or failure to remove a sponge from the incision before closing it. *Mitchell v. Lincoln,* 366 Ark. at 598, 237 S.W.3d at 460 (citing *Lanier v. Trammell,* 207 Ark. 372, 180 S.W.2d 818 (1944)).

with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. But . . . we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim. On the contrary, Rule 56(c), which refers to "the affidavits, if any" . . . suggests the absence of such a require-ment. And if there were any doubt about the meaning of Rule 56(c) in this regard, such doubt is clearly removed by Rules 56(a) and (b), which provide that claimants and defendants, respectively, may move for summary judgment "with or without supporting affidavits[.]"

*Celotex*, 477 U.S. at 322–23. Our Rule 56 tracks the federal rule and is to be construed in accordance with federal decisions. *Reporter's Notes* to Ark. R. Civ. P. 56; *Caplener v. Bluebonnet Milling Co.*, 322 Ark. 751, 911 S.W.2d 586 (1995).

In their motion for summary judgment, appellees alleged that Hamilton could not meet her burden of proving the elements of negligence and causation because her only expert witness, Dr. Joseph Hume, admitted that speculation was the basis of his opinions regarding the alleged negligence. Appellees attached excerpts from his deposition to their motion. In the deposition Dr. Hume stated that, had there not been a third bleeder at the time of the second surgery, he would have had no criticisms of either appellee. Dr. Hume said that he had no specific criticisms of appellee Dr. Taylor and did not feel "that he had deviated below any standard of care" with which Dr. Hume was familiar. Dr. Hume's criticism of appellee Dr. Allen was that he did not adequately explore the bleeding in the second surgery and had deviated below the standard of care; this was based upon Dr. Hume's opinion that there was a third bleeding site that was not identified. Dr. Hume admitted, however, that he did not know whether there had been a third bleeder at the time of the second surgery and that it would require speculation on his part to say so.

The circuit court based its order of summary judgment upon the following finding: "Defendants have demonstrated that there exists no genuine issue of material fact and that they are entitled to judgment as a matter of law. Plaintiff has failed to meet proof with proof." The trial court did not err in this ruling. Appellees demonstrated their prima facie entitlement to summary judgment by attaching to their motion portions of Dr. Hume's deposition demonstrating that his opinion of negligence on the

part of appellees was speculative, thus rendering his opinion insufficient to satisfy Hamilton's burden of proof.[4]

In affirming the order of summary judgment, we also reject Hamilton's argument that the trial court's granting of summary judgment in her second lawsuit was in error because, prior to the non-suit of her first lawsuit, the court had denied appellees' motion in limine and had ruled that Dr. Hume could testify at trial. Hamilton refers us to no authority for her argument, and we are aware of none. As appellees note, the trial court never addressed the merits of the summary-judgment motion in the first lawsuit because the motion was not timely filed; rather, the court treated it as a motion *in limine* and stated that the court would rule on the merits of appellees' argument after Dr. Hume testified at trial. However, Hamilton non-suited her first lawsuit and it never went to trial. We are unaware of any authority that would preclude a party from filing a motion for summary judgment in a second lawsuit and relying upon the same evidence as was relied upon in a previously non-suited lawsuit, especially where, as here, the allegations in the second lawsuit are the same as those in the first lawsuit.

We take this opportunity to review and clarify the parties' burdens of proof regarding summary judgment when the movant is the defendant in a medical-malpractice action. In *Skaggs v.*

---

[4] The dissenting judge misconstrues today's majority opinion as assigning to a plaintiff in a medical-malpractice case a higher burden of proof at the summary-judgment stage than is assigned to a plaintiff in any other type of case. To the contrary, we make no such distinction. Quite simply, in a medical-malpractice case, as in any other type of case, when a party cannot present proof on an essential element of his or her claim, there is no remaining genuine issue of material fact and the party moving for a summary judgment is entitled to judgment as a matter of law. *Irvin v. Jones*, 310 Ark. 114, 832 S.W.2d 827 (1992) (citing *Short v. Little Rock Dodge, Inc.*, 297 Ark. 104, 106, 759 S.W.2d 553, 554 (1988), and *Celotex, supra*). *See Sundeen v. Kroger*, 355 Ark. 138, 133 S.W.3d 393 (2003) (affirming summary judgment where plaintiff offered no proof of coercive actions or efforts to extort anything from him in abuse-of-process case against grocery store and its security officer); *Irvin v. Jones, supra* (affirming summary judgment because plaintiffs presented no proof of delivery, an essential element of their claim that certificates of deposit were gifts *inter vivos*); *Short v. Little Rock Dodge, Inc., supra* (affirming summary judgment where plaintiffs claiming negligence and strict liability for manufacture and sale of a defective product were unable to produce evidence that a defect in the car or the dealer's negligence in failing to repair it caused the fatal automobile accident; when the summary judgment motion was made, the trial court had before it depositions and responses to requests for admissions and interrogatories).

*Johnson, supra,* and in *Robson v. Tinnin, supra,* the movants met their burden of proving a prima facie case for summary judgment by showing that the plaintiffs had no expert to testify as to the breach of the applicable standard of care. In *Brumley v. Naples,* 320 Ark. 310, 896 S.W.2d 860 (1995), where the appellant's expert on the issue of informed consent could not offer an opinion as to the proper standard of care, the appellant did not meet her burden of proof and no material issue of fact existed. In *Dodd v. Sparks Regional Medical Center, supra,* summary judgment was appropriate where the affidavit, which offered only a statement of what care should have been provided and an opinion that the health-care providers had failed to exercise due care, did not establish the applicable standard of care. When the defendant demonstrates the plaintiff's failure to produce the requisite expert testimony, the defendant has demonstrated that no genuine issues of material fact exist and is therefore entitled to summary judgment as a matter of law. *Id.; Skaggs v. Johnson, supra; Robson v. Tinnin, supra; Brumley v. Naples, supra; Reagan v. City of Piggott,* 305 Ark. 77, 805 S.W.2d 636 (1991). The moving party is not required to support its motion with affidavits or other materials further negating the plaintiff's claim. *See* Ark. R. Civ. P. 56 and *Celotex, supra.*

■ In *McAdams v. Curnayn,* 96 Ark. App. 118, 239 S.W.3d 17 (2006), a medical-malpractice action against a veterinary clinic and its employees, this court correctly affirmed an order of summary judgment but incorrectly addressed the summary-judgment movants' burden of proof. We summarily, and incorrectly, disposed of their argument that appellant McAdams, the nonmoving party and the plaintiff below, had failed through his expert witness to demonstrate the standard of care and a breach of the standard. Reviewing the proof presented by appellees (the defendant/movants) in their motion for summary judgment, we stated in dicta:

> Appellees did not present affirmative proof of the applicable standard of care required of a veterinarian in the February 14, 2000 visit or affirmative proof that the veterinarian complied with the standard of care. . . . Without proof supporting the motion for summary judgment on the applicable standard or breach thereof, appellant was under no duty to rebut those two aspects of medical negligence.

96 Ark. App. at 123, 239 S.W.3d at 20 (citations omitted). By the opinion we issue today, we acknowledge that insofar as *McAdams*

appears to say that a defendant/summary-judgment movant in a medical malpractice case is required to present affirmative proof of the standard of care and that the defendant's conduct conformed to that standard, *McAdams* is an incorrect statement of the law where the basis of the summary-judgment motion is the plaintiff's case.

### Timeliness of Response to the Motion for Summary Judgment

Hamilton contends in her second point on appeal that her response to appellees' motion for summary judgment was timely and, thus, that appellees' motion to strike on the basis of untimeliness should have been denied. In their motion to strike Hamilton's response to the motion for summary judgment, appellees asserted that it was untimely and, further, that Dr. Miller's affidavit failed to establish an issue of material fact. The circuit court found that Hamilton had not responded to the summary-judgment motion within the time prescribed by the Arkansas Rules of Civil Procedure; the court further stated that, had it considered Dr. Miller's affidavit, the court would have found the affidavit insufficient to meet proof with proof.

The adverse party to a motion for summary judgment shall serve a response and supporting materials, if any, within twenty-one days after the motion is served. Ark. R. Civ. P. 56(c)(1). Under Rule 6(d), "Whenever a party has the right . . . to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon him by mail or commercial delivery company, three (3) days shall be added to the prescribed period."

Hamilton was served with appellees' motion for summary judgment on October 4, 2005. She argues on appeal that she timely responded within the time prescribed by our rules when she sent appellees' counsel a copy of her "Plaintiff's Designation of Expert Witness" designating Dr. Harold Miller as her only expert witness and attaching his affidavit to the notice. Appellees assert that this paper was wholly insufficient as "a response" to the summary-judgment motion as contemplated by our Rules of Civil Procedure. They note that on November 28, 2005 they were served with Hamilton's formal response, entitled "Plaintiff Susan R. Hamilton's Response to Defendant's Motion for Summary Judgment," which addressed the merits of their motion for summary judgment. They contend that this response was untimely and that the court's striking of it was proper because of untimeliness.

■ We reject Hamilton's argument that the document designating Dr. Miller as her expert witness was a response to the motion for summary judgment. Neither the document nor the attached affidavit addressed the merits of the motion, and nothing in the record indicates that either party treated this paper as a response to the motion before Hamilton served her actual response on November 28, 2005. Appellees' summary-judgment motion was served on Hamilton on October 4, 2005, and, without requesting an extension of time within which to file her response, she did not serve her response until almost eight weeks later. The trial court did not err in finding that Hamilton did not respond within the time allowed by our Rules of Civil Procedure; therefore, there was no error in the striking of her response on the basis of untimeliness.[5]

### Supplementation of Dr. Miller's Affidavit

As her third point on appeal, Hamilton contends that the circuit court erred in denying her motion to file a supplemental affidavit of her designated expert witness, Dr. Harold Miller. This motion was submitted to the trial court approximately a month before the scheduled date of the summary-judgment hearing on May 12, 2006. The court denied the motion to supplement at the conclusion of the May 12 hearing.

■ Hamilton argues that the denial of her motion to supplement Dr. Miller's affidavit was error because service of his original affidavit was timely and appellees would suffer no surprise or prejudice by supplementation of the affidavit. She points out that, under Ark. R. Civ. P. 56(e), the circuit court may permit affidavits to be supplemented by further affidavits. However, as we noted in our discussion of Hamilton's second point on appeal, the paper designating Dr. Miller as Hamilton's expert witness was not

---

[5] The designation of witness was served on October 27, 2005, twenty-three days after Hamilton was served the summary-judgment motion on October 4. Hamilton argues that, because the motion was served by both fax *and* mail, Rule 6(d) allowed three days for mailing in addition to the twenty-one days prescribed by Rule 56(c)(1), for a total of twenty-four days.

Appellees argue that Hamilton had only twenty-one days from October 4 to serve her response. Because we agree with the trial court that the designation of witness is not a response to the motion, we need not decide this issue.

a response to appellees' motion for summary judgment. Thus, we need not address any argument regarding supplementation of Dr. Miller's affidavit.

█ Hamilton also argues that a written order of the circuit court, marked with a file date of May 10, 2006, granted "leave to submit supplemental affidavit of Dr. Harold Miller." The order, submitted to the court by Hamilton as a proposed order, was entered without any of the other parties' knowledge, and no mention was made of it at the hearing two days later. At the hearing on May 12, 2006, the court denied Hamilton's motion to supplement Dr. Miller's affidavit, and an order to that effect was entered on June 1, 2006. By written order of June 26, 2006, the court vacated the order of May 10, 2006 and left its order of June 1, 2006 undisturbed. The denial of the motion to supplement was within the discretion given to the trial court by Rule 56(e). Further, Hamilton has demonstrated no prejudice from the mistaken granting of her motion.

### Oral Motion for a Continuance

Hamilton contends in her final point on appeal that the trial court erred by denying her oral motion for a continuance at the hearing on May 12, 2006. She argues on appeal, as she did to the trial court, that sufficient discovery had not taken place and that she had not been able to schedule depositions with appellees.

Rule 56(f) allows a party opposing a motion for summary judgment to request a continuance:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may . . . order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Ark. R. Civ. P. 56(f). Under this rule, the decision on whether to grant a continuance is a matter of discretion with the trial court. *Jenkins v. Int'l Paper Co.*, 318 Ark. 663, 887 S.W.2d 300 (1994).

█ Hamilton did not submit an affidavit stating the reasons that the trial court should order a continuance to allow further discovery, as is required by Rule 56(f). From her counsel's comments to the trial court during the hearing, it appears that the

additional discovery Hamilton desired was for appellees to take the deposition of Dr. Miller, an offer that appellees' attorney had earlier declined. The trial court acted well within its discretion in denying Hamilton's oral motion for a continuance.

Affirmed.

GLADWIN, MARSHALL, VAUGHT, and MILLER, JJ., agree.

BAKER, J., dissents.

KAREN R. BAKER, Judge, dissenting. If our standard on review of summary judgment is that we actively work to prevent a medical malpractice case from going to trial, then we should clearly state that goal. The reality is that we are not far from that practice now. One study conducted by the U.S. Department of Health and Human Services revealed that only 1.53% of those injured by medical malpractice file a claim. See Kimberly J. Frazier, *Arkansas's Civil Justice Reform Act of 2003: Who's Cheating Who?*, 57 Ark. L. Rev. 651, 655 & n. 28 (2004). The same study indicated that a mere 8-13% of the claims filed by these injured patients or their survivors proceeded to trial; "and of these only 1.2-1.9% ended with a verdict favorable to the plaintiff." *Id.* nn. 29-30. *See also Examining the Work of State Courts, 2005, A National Perspective from the Court Statistics Project* (2006) at 29 (concluding that in 2004, medical malpractice cases accounted for an average of only four percent of tort cases in 13 states reporting).

Eliminating the threat of a jury trial would have an enormous impact on the handling of malpractice claims. As Neil Vidmar, a professor with Duke University known for his extensive study of medical malpractice litigation, recently explained in testimony to the U.S. Senate, "Without question the threat of a jury trial is what forces parties to settle cases. The presence of the jury as an ultimate arbiter provides the incentive to settle but the effects are more subtle than just negotiating around a figure. The threat causes defense lawyers and the liability insurers to focus on the acts that led to the claims of negligence." Testimony of Neil Vidmar, Professor of Law, Duke Law School before The Senate Committee on Health, Education, Labor and Pensions, "Hearing on Medical Liability: New Ideas for Making the System Work Better for Patients," June 22, 2006 at 21. (Citations omitted.)

As Professor Vidmar opined, the threat of the jury trial forces those defending to actually examine the acts of the medical care providers. Ordinarily, one might anticipate that a system of justice

would encourage the participants to focus on the facts and circumstances surrounding the allegations of harm. Given that just fractions of a percentage of claims ever come to trial in a medical malpractice case, the courts should be particularly vigilant in adhering to our procedural safeguards.

Instead of adhering to precedents that safeguard these procedures, the majority states the following in its opinion: "We take this opportunity to review and clarify the parties' burdens of proof regarding summary judgment when the movant is the defendant in a medical-malpractice action." The five judges in the majority on this panel then purport to, for lack of a better term, "correct" the five judges in the majority on *McAdams v. Curnayn*, 96 Ark. App. 118, 239 S.W.3d 17 (2006). While I dissented on other grounds in *McAdams*, the majority in *McAdams* did accurately state our supreme court's precedents regarding the standard of review for summary judgment in medical malpractice cases. My dissent in this case is based upon two premises: (1) We have no authority to overrule our supreme court's mandates on the standard of review for summary judgment cases; (2) Our supreme court applies the same standards of proof in a summary judgment case involving medical malpractice as it does in any other case disposed of by summary judgment.

The majority disagrees with each of those premises as it further decrees: "By the opinion we issue today, we acknowledge that insofar as *McAdams* appears to say that a defendant/summary-judgment movant in a medical malpractice case is required to present affirmative proof of the standard of care and that the defendant's conduct conformed to that standard, *McAdams* is an incorrect statement of the law where the basis of the summary-judgment motion is the plaintiff's failure to produce evidence to establish an essential element of the plaintiff's case."[1]

Perhaps the majority has adopted the general premise of the legislature's enactment of The Civil Justice Reform Act of 2003: "The Civil Justice Reform Act of 2003 (hereinafter 'Act 649') transforms the manner in which Arkansas courts must conduct business." Frazier, *supra*. One author, Kimberly Frazier, applied

---

[1] The statement in *McAdams* to which the majority refers reads as follows: "Without proof supporting the motion for summary judgment on the applicable standard or breach thereof, appellant was under no duty to rebut those two aspects of medical negligence." 96 Ark. App. at 123, 239 S.W.3d at 20 (2007).

Act 649 to *Advocat Inc. v. Sauer*, 353 Ark. 29, 111 S.W.3d 346 (2003), a case involving negligence of a nursing home, to explain the effect the Act had upon the court's practices:

> Under Act 649, a cause of action with the same facts would have had higher burdens of proof for punitive damages, diminished venue option, no possibility of joint liability, different pleading requirements and a maximum jury award of $1 million dollars (in stark contrast with the $63 million in punitive damages initially awarded in *Sauer*).

Of course, I believe that where the Act infringes upon the court's rules and procedures, our supreme court will reject any such infringement. One example of such a rejection is our supreme court's finding as unconstitutional Act 649's requirement that a trial court dismiss a plaintiff's malpractice case if a plaintiff fails to file an affidavit of reasonable cause within thirty days of filing her complaint, now codified at Ark. Code Ann. § 16-114-209(b) (Repl. 2006). *See Summerville v. Thrower*, 369 Ark. 231, 253 S.W.3d 415 (2007). Our supreme court concluded that the mandatory thirty-day requirement for the affidavit of reasonable cause after filing the complaint directly conflicted with Rule 3 of our Rules of Civil Procedure regarding commencement of litigation. *Id*. Accordingly, they reversed and remanded the case for further proceedings. *Id*. In explaining its reasoning, our supreme court quoted with approval a sister court's striking of a similar provision:

> The Oklahoma legislature implemented the Affordable Access to Health Care Act . . . for the purpose of implementing reasonable, comprehensive reforms designed to improve the availability of health care services while lowering the cost of medical liability insurance and ensuring that persons with meritorious injury claims receive fair and adequate compensation. Although statutory schemes similar to Oklahoma's Health Care Act do help screen out meritless suits, the additional certification costs have produced a substantial and disproportionate reduction in the number of claims filed by low-income plaintiffs. The affidavit of merit provisions front-load litigation costs and result in the creation of cottage industries of firms offering affidavits from physicians for a price. They also prevent meritorious medical malpractice actions from being filed. The affidavits of merit requirement obligates plaintiffs to engage in extensive pre-trial discovery to obtain the facts necessary for an expert to render an opinion resulting in most medical malpractice causes being out of court during discovery. Rather

than reducing the problems associated with malpractice litigation, these provisions have resulted in the dismissal of legitimately injured plaintiffs' claims based solely on procedural, rather than substantive *grounds.*

*Summerville,* 369 Ark. at 236-37, 253 S.W.3d at 419 (quoting *Zeier v. Zimmer, Inc.,* 152 P.3d 861, ¶ 21 869 (Okla. 2006)) (emphasis added).

Our supreme court's rejection of this legislative infringement upon court procedures in the management of a medical malpractice action reaffirms the premise that we do not have a different standard of review for orders granting summary judgment in a medical malpractice case. Nor should we. Despite much discussion to the contrary, litigation and the threat of jury trials improves health care in much the same way that litigation in other contexts protects the safety of the citizens of this country:

> In the absence of a comprehensive social insurance system, the patient's right to safety can be enforced only by a legal claim against the hospital. . . . [M]ore liability suits against hospitals may be necessary to motivate hospital boards to take patient safety more seriously. . . . Anesthesiologists were motivated by litigation to improve patient safety. As a result, this profession implemented 25-years-ago a program to make anesthesia safer for patients and as a result, the risk of death from anesthesia dropped from 1 in 5000 to about 1 in 250,000.

George J. Annas, J.D., M.P.H., "The Patient's Right to Safety — Improving the Quality of Care through Litigation against Hospitals," *New England Journal of Medicine,* May 11, 2006.

Under the majority's analysis, a plaintiff in a medical malpractice case has a higher burden of proof at the summary judgment stage of a proceeding than a plaintiff in any other type of case. A plaintiff has to establish through expert testimony that the defendant committed malpractice before a plaintiff is allowed to present that proof to the fact-finder. According to the majority, all a defendant in a medical malpractice case need allege in a motion for summary judgment is that the plaintiff has not yet met, by expert testimony, his burden of proof pursuant to the statutes. No provision in the medical malpractice statutes requires that a plaintiff meet his or her burden of proof prior to trial. Neither has our supreme court adopted that standard:

Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. This court views evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable persons might reach different conclusions from those undisputed facts.

*Rice v. Tanner,* 363 Ark. 79, 82, 210 S.W.3d 860, 863 (2005) (citations omitted) (holding that once a movant in a medical malpractice case presents evidence in a summary judgment context establishing the standard of care and that the standard of care was met by the defendant, the nonmoving party must present evidence to create a fact question).

In the context of summary judgment, our duty as a reviewing court is to determine, first and foremost, whether the moving party has presented evidence that establishes that the facts are undisputed and that the *only* conclusion from the undisputed facts is that the movant's actions cannot be the legal basis for recovery. *See id.* The majority's confabulation of our standard by inserting a sufficiency determination in a medical malpractice summary judgment is perplexing. What is even more confusing is the majority's citation to federal procedure and precedent to support this perversion. Not only is our supreme court not bound by federal case law interpreting federal procedural rules regarding summary judgment, but our supreme court has specifically rejected the premise that a trial court considering a summary judgment motion should determine whether the evidence presented at summary judgment is sufficient to sustain a burden of proof at trial:

Also cited by the petitioners is *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), in which the Supreme Court stated that the summary-judgment standard "mirrors the standard for a directed verdict." That statement was

repeated by the Supreme Court, although it was not the basis of the holding, in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), a case we have cited often for other language concerning summary-judgment law but not for the "mirror" concept.

*If it has not been clear heretofore,* we hope this opinion clarifies that, although we follow federal courts' interpretation of the parallel rule, F.R.C.P. 56(c) when possible for the sake of uniformity, *we have never gone so far as to say, much less hold, that we will make a "sufficiency of the evidence" determination when a summary-judgment motion is at issue.* We regard that directed-verdict standard, used in ruling on motions made pursuant to Ark. R. Civ. P. 50, as being somewhat different from the summary-judgment standard.

We have ceased referring to summary judgment as "drastic" remedy. We now regard it simply as one of the tools in a trial court's efficiency arsenal; however, we only approve the granting of the motion when the *state of the evidence* as portrayed by the pleadings, affidavits, discovery responses, and admissions on file is such that the nonmoving party is not entitled to a day in court, *i.e.,* when there is not any genuine remaining issue of material fact and the moving party is entitled to judgment as a matter of law.

*Wallace v. Broyles,* 331 Ark. 58, 194-95, 961 S.W.2d 712, 723-24 (1998) (emphasis added).

Our supreme court admonishes that a "sufficiency of the evidence" determination is not the appropriate standard when a summary-judgment motion is at issue. That specific admonition alone requires reversal of the case before us. In direct contradiction with our supreme court's instruction that sufficiency of the evidence is not our determination, the majority opines: "Appellees demonstrated their prima facie entitlement to summary judgment by attaching to their motion portions of Dr. Hume's deposition demonstrating that his opinion of negligence on the part of appellee was speculative, thus rendering his opinion insufficient to satisfy Hamilton's burden of proof."[2]

---

[2] When evaluating an expert opinion regarding the causation aspect of the negligence claim, a trial court should be mindful of the following admonition emphasizing that proximate cause is a jury question: "Arkansas does not require any specific "magic words" with respect to expert opinions, and they are to be judged upon the entirety of the opinion,

Not only does the majority err by applying a sufficiency of the evidence standard to hold that the expert's opinion was insufficient to satisfy Hamilton's burden of proof, but the majority also further compounds that error by completely ignoring the fact that the medical expert is legally incapable of admitting that his testimony is impermissibly speculative. Examining the appellees' motion for summary judgment makes the majority's error painfully clear.

Paragraph two of appellees' motion for summary judgment reads as follows: "Expert testimony is inadmissible if based upon speculation." Paragraph three states the following: "Plaintiff's only liability expert witness, Dr. Joseph Hume, admitted during his deposition that he bases his opinions regarding the issue of negligence (and therefore on the issue of causation) on speculation." Paragraph four continues with this conclusion: "Because plaintiff's theories of negligence and causation are based upon speculation, testimony regarding those theories is inadmissible and thus plaintiff cannot satisfy her burden of proof against Dr. Allen and Dr. Taylor. Where a plaintiff cannot meet her burden of proof on an essential element of her claim, the defendant is entitled to summary judgment."

Appellees' motion for summary judgment characterized the medical expert's testimony as speculation. In their brief in support, appellees cite three cases and proclaim that "the Supreme Court affirmed *directed verdicts* in favor of medical care providers where plaintiffs failed to present expert medical testimony to support their allegations of negligence against medical care providers." (Emphasis added.) Motions for directed verdict and judgment notwithstanding the verdict as to proof of negligence and resulting damages are challenges to the sufficiency of the evidence. *See Callahan v. Clark*, 321 Ark. 376, 386, 901 S.W.2d 842, 847 (1995); *see Conagra, Inc. v. Strother*, 340 Ark. 672, 676, 13 S.W.3d 150, 153 (2000) "motion for JNOV is technically only a renewal of the motion for a directed verdict made at the close of the evidence).

---

not validated or invalidated on the presence or lack of 'magic words.' *See Wackenhut Corp. v. Jones,* 73 Ark.App. 158, 40 S.W.3d 333 (2001). Even in medical malpractice cases, proximate cause may be shown from circumstantial evidence, and such evidence is sufficient to show proximate cause if the facts proved are of such a nature and are so connected and related to each other that the conclusion may be fairly inferred. *See Stecker v. First Commercial Trust Co.,* 331 Ark. 452, 962 S.W.2d 792 (1998)." *Wal-Mart Stores, Inc. v. Kilgore,* 85 Ark. App. 231, 148 S.W.3d 754 (2004)).

Appellees' entire motion is based upon their claim that Dr. Hume admitted that his opinions were based upon speculation. While that argument may be appropriate in the context of analyzing whether or not a trial court properly directed a verdict in a jury trial, it is inapplicable to our analysis regarding the propriety of an order granting summary judgment. As convenient as the argument may be, it is understandable why appellees failed to include any legal authority regarding any admission by Dr. Hume that his opinion was impermissibly speculative as a matter of law. While there is nothing in the record to indicate that Dr. Hume would have had any insight into the legal significance of impermissible theorizing to reach a conclusion, even if he had testified that he was the foremost legal authority in the country on evidentiary matters with an emphasis on impermissible speculation, his legal opinion as to the admissibility of his testimony would be completely irrelevant. Evidentiary matters regarding the admissibility of evidence are left to the sound discretion of the trial court and rulings in this regard will not be reversed absent an abuse of discretion. *White v. State*, 330 Ark. 813, 958 S.W.2d 519 (1997).[3]

Nothing Dr. Hume might have said could relieve the trial court of its duty to review the "evidence" presented to it to determine whether a factual matter was presented. It was the trial court's duty, not a party's nor a witness's, to determine whether the appellees had established a prima facie case that they were entitled to judgment as a matter of law. The duty of a plaintiff, even in a malpractice case, to present proof prior to trial only arises when the moving party first establishes a prima facie case that judgment is warranted as a matter of law. When the proof supporting a motion for summary judgment is insufficient, there is no duty on the part of the opposing party to meet proof with proof. *See Robson v. Tinnin*, 322 Ark. 605, 911 S.W.2d 246 (1995); *Wolner v. Bogaev*, 290 Ark. 299, 718 S.W.2d 942 (1986). Our supreme court has explained the application of this principle in previous malpractice cases:

> In *Wolner*, the plaintiff was in the hospital for prostatic surgery, and following surgery, he rose from a chair, fell, and broke his arm. He sued the hospital and his urologist, and the circuit court granted

---

[3] Even Rule 701 of the Arkansas Rules of Evidence allowing the opinion of lay persons, rather than experts, has been recognized not as a rule against opinions, but as a rule that conditionally favors them. *Bridges v. State*, 327 Ark. 392, 938 S.W.2d 561 (1997).

summary judgment in favor of both. Our supreme court reversed with respect to the urologist and stated that it was the responsibility of the urologist, as the moving party, to prove the requisite standard of care and that he had conformed to that standard of care before the opposing party was required to present proof of the contrary. This he failed to do.

Similarly, in *Collyard v. American Home Assur. Co.*, *supra*, the issue was whether proof was sufficient to sustain summary judgment in a slip and fall case. The plaintiff (Collyard) gave a deposition in which she stated that she did not know how the water causing her fall got on the floor or how long it had been there. The defendant business (YMCA) where the plaintiff fell moved for summary judgment and attached the plaintiff's deposition in support of the motion. The circuit court granted the motion in favor of the defendant because the plaintiff had not responded to the motion by countervailing proof. This court reversed and stated:

The appellant [Collyard] alleged negligence on the part of the YMCA. The appellee [YMCA] never controverted this allegation by affidavit or other proof. It simply offered the deposition of Collyard that *she* did not know how the water got there or how long it had been there. The appellee and trial judge mistakenly presumed that the burden was on Collyard to come forward with additional proof on this issue. The burden in a summary judgment proceeding is on the moving party; it cannot be shifted when there is no offer of proof on a controverted issue. The object of a summary judgment is not to try the issues but to determine if there are issues of fact. *Ashley v. Eisele*, 247 Ark. 281, 445 S.W.2d 76 (1967).

Whether the YMCA was negligent remained a fact in issue. If appellant had offered proof that the YMCA was not negligent, then Collyard would have had to produce a counter-affidavit or proof refuting the offer. But that was not the case. The appellee based its motion only on the deposition of Collyard, the plaintiff. The allegation in the complaint remained uncontroverted and Collyard should be permitted to present other evidence on that fact. *Collyard*, 271 Ark. at 229-230, 607 S.W.2d at 668.

*Cash v. Lim*, 322 Ark. 359, 365-66, 908 S.W.2d 655, 658-59 (1995) (reversing and remanding summary judgment award holding that surgeon's deposition, which was attached to defendants' motion for

summary judgment, did not constitute proof of lack of causation that required countervailing proof from plaintiffs).

Applying the principles discussed in *Wolner, supra,* and *Cash, supra,* appellees as the moving party had to prove the requisite standard of care and that they had conformed to that standard of care before appellant was required to present proof to the contrary. Appellees' failure to provide proof that they had met the standard of care precluded the entry of summary judgment and requires reversal in this case.

It may seem axiomatic, from reading our supreme court precedents and our reiteration of those precedents in *McAdams,* that appellees failed to make a prima facie case by failing to first establish conformity with the standard of care. Yet, appellees' based their argument and the majority renders its opinion upon the assumption that appellees only needed to prove that appellant had not yet presented the requisite expert testimony. Rather than presenting evidence that established the standard of care and compliance with that standard, appellees presented evidence that appellant's expert witness had not demonstrated the standard of care and violation of that standard that proximately caused damages to appellant. The argument is convenient for appellees who conducted the deposition of appellant's expert witness and were under no obligation to inquire as to the standard of care and compliance with the standard in questioning appellant's expert.

Even with their complete control of the questioning of appellant's expert, Dr. Hume, the statements by Dr. Hume were not as impermissibly speculative as the majority contends. Dr. Hume testified that the deviation from the standard of care in this case came from the failure to properly identify the cause of the excessive bleeding which would have been identified if Dr. Allen had adequately opened the incision area. Appellees' counsel questioned, "If I understand your testimony, your opinion in this case that Dr. Allen deviated below the standard of care is based upon your opinion that there was a third bleeding site that was not identified?" It is clear from the context that the third site was not identified *by Dr. Allen* because he did not extend the incision enough to visualize the area in question. When appellees' counsel asked, "And it would be speculation to say they would have found anything, correct?", Dr. Hume responded, "Well, no, I still think that there was a bleeder from the first surgery that they didn't get or they tamponaded it just enough when they put those sutures in for the oozers and then it reopened up."

Ironically, the testimony that the appellees and the majority apparently rely so heavily upon regarding speculation surrounds the attempts by counsel to commit Dr. Hume to saying that the excessive bleeding was caused by the two sources of bleeding identified by appellees but that appellees just failed to adequately address the bleeding:

Q: And you don't have any reason to doubt, as we sit here today, Dr. Allen's testimony concerning how far he opened that up?

A: No. I don't have any — he just didn't go all the way up in the infundibulopelvic retroperitoneal space of the ligament.

Q: So am I correct, do you believe that there was a third bleeding site?

A: Probably. It was artery. And we know he didn't get it because the surgeon found it on the 12th.

. . .

Q: Just to make sure I understand. During the second surgery, meaning the first exploratory surgery, from your review of the records and Dr. Allen's deposition, it's your opinion that there was a third bleeding site?

A: That's correct.

Q: What in your opinion caused that third bleeding site?

A: I think that the vessell retracted.

Q: When did the vessel retract?

A: At the initial surgery, he lost it in the clamp, pulled back. Or it could have torn, depending upon how much tension was placed on it.

Q: Did you see in looking at the operative note from the second surgery, any evidence of continuing bleeding after Dr. Allen had sutured the two bleeding sites he identified?

A: He sutured the two oozing and he didn't feel he saw any other sites. But I think that it was probably tamponaded for a bit and then it opened back up. Since its arterial it will go through spasms.

Q: So in other words, you don't know whether this third bleeding site was actually bleeding at the time of the second surgery?

A: That's correct.

Q: It would be speculation on your part to say that it was bleeding?

A: It would be speculation. But for the amount of blood that she had there, it probably had bled on and off to make the volume up so great.

. . .

A: I feel that the amount of blood there was not — was more than what the two oozes would cause.

Q: Is that based upon your opinion that the sites were both oozing at the time of the second surgery?

A: Right.

Q: So as far as whether they had been bleeding more vigorously before —

A: I have no opinion on that.

Q: So in other words, when you saw the oozing of the two sites Dr. Allen identified during the second surgery, you can't say without speculating that those two sites, or one or the other, wasn't bleeding more vigorously before?

A: I can't say for sure that one of those was bleeding heavy.

Q: So as far as the blood that was actually found during the second surgery, it would be speculation to say that it didn't come from one or both of the two bleeding sites —

A: That's true.

. . .

Q: Is it possible that the bleeding could have started after the second surgery?

A: I doubt it.

Q: But is it possible?

A: It could be possible.

. . .

Q: I take it, if there was not a third bleeder at the time of the second surgery, you would not have had any criticisms of Dr. Allen or Dr. Taylor?

A: No.

Q: Is that correct?

A: That's correct.

Q: As we sit here today —

A: There wouldn't be a second surgery.

. . .

Q: — again, if there was not a bleeding site during that second surgery, that would have served no purpose to go up and look for it further?

A: It would have made sure that there wasn't anything that we were — that he was missing. It's what you do when you have to go back in.

These exchanges show that Dr. Hume examined the surgical notes from the procedures and the deposition of one defendant surgeon to conclude that the standard of care required that the surgeon determine the source of the excessive bleeding by making

a longer incision than that performed by appellees to adequately examine the area. After pages and pages of this type of questioning about matters other than appellees' failure to properly examine the patient, and only pages 94 through 117 of Dr. Hume's deposition were attached to the motion, Dr. Hume's somewhat sharp response in reiterating his criticism is understandable:

> A: Well, no. My criticism is that he didn't open that whole space up so that he could visualize what he was clamping. I mean, when you do that, you basically have skeletonized the vessels so that you know damn good and well that you're grabbing onto the vessel and not a lot of tissue with it.

The majority does not explain how this testimony demonstrates that appellees were entitled to judgment as a matter of law. By their reasoning, an examination of the evidence is unnecessary because once appellees alleged that the evidence was insufficient, appellant had to provide evidence sufficient to meet her statutory burden of proof or her medical malpractice case would be dismissed on summary judgment. Until our supreme court holds that we have a different standard for summary judgment in medical malpractice cases, the majority's approach is not the law. Because the majority's approach clearly violates that standard, this case should be reversed and remanded on appellant's first argument rendering the remaining arguments moot.

Accordingly, I dissent.