Cite as 2022 Ark. App. 501

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-20-230

| | |
|---|---|
| KESHIA GONZALES, INDIVIDUALLY AND AS NEXT FRIEND AND NATURAL GUARDIAN OF ANTONIO ROSS, A MINOR<br><br>APPELLANT<br><br>V.<br><br>CONTINENTAL CASUALTY COMPANY, AS LIABILITY CARRIER FOR ARKANSAS CHILDREN'S HOSPITAL; ARKANSAS CHILDREN'S HOSPITAL; AND JERRIL GREEN, M.D.<br><br>APPELLEES | Opinion Delivered December 7, 2022<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION<br>[NO. 60CV-15-2801]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br>REVERSED AND REMANDED IN PART; AFFIRMED IN PART |

### STEPHANIE POTTER BARRETT, Judge

This appeal arises from an order granting summary judgment in favor of appellees, Continental Casualty Company, as liability carrier for Arkansas Children's Hospital; Arkansas Children's Hospital; and Jerril Green, M.D. (collectively referred to herein as "appellees") that dismissed the complaint of appellant, Keshia Gonzales. Gonzales's complaint asserts medical-malpractice claims for the treatment her son received at Arkansas Children's Hospital. The appellant filed a timely notice of appeal. We reverse the circuit court's order granting summary judgment to the appellees and affirm the circuit court's order denying Gonzales's motion to compel.

I. *Background Facts*

In August 2009, Gonzales's son (the "minor child") and his twin brother were born prematurely at twenty-eight weeks. Minor child spent several months at Arkansas Children's Hospital ("ACH") as an infant and had congenital airway difficulties that ultimately led him to undergo a laryngeal reconstruction. On August 20, 2013, Dr. Gresham Richter, M.D., an ENT surgeon and attending at ACH, performed a microlaryngoscopy, bronchoscopy, tonsillectomy, adenoidectomy, and a right supraglottoplasty. Dr. Richter had performed other airway procedures on minor child in the past. In an effort to settle down minor child's airway after surgery, Dr. Richter reintubated him. Minor child was moved to ACH's pediatric intensive care unit ("PICU") in stable condition, and Dr. Adnan Bhutta was the attending pediatric critical care doctor. Between Friday night and Saturday morning, minor child was stable; therefore, he was extubated at 10:25 a.m. Saturday morning. Dr. Bhutta was present for the extubation, and after approximately one hour, he transferred care to another critical care attending physician, Dr. Stephen Schexnayder.

After the extubation, minor child's breathing became labored and rapid with stridor, which did not decrease with respiratory treatments and medications. Dr. Jeremy Garlick, a pediatric critical care fellow,[1] examined minor child and spoke to Dr. Richter about how best to proceed. Dr. Garlick assembled the nursing staff, respiratory staff, and resident at

---

[1]A fellow is a licensed physician who is receiving additional training in a subspecialty after completing a residency. Fellows may serve as supervising physicians for patient care in the hospital, including the supervision of residents providing patient care. Dr. Garlick supervised residents in his role as a fellow.

the bedside to reintubate minor child. Dr. Howard Orsburn, a resident physician, began the reintubation process by looking at minor child's airway with a laryngoscope. When an airway could not be seen, Dr. Garlick took over and looked through the laryngoscope and saw "a lot of blood in the back of the oropharynx." The attempts to reintubate were unsuccessful, and minor child went into respiratory distress leading to a "code blue" being called at 1:05 p.m. It is undisputed that no one from the ENT department was present at this time.

ACH anesthesiologist, Dr. John Robben, was called at 1:07 p.m.; however, when he arrived at 1:13 p.m., he was also unable to establish an airway; therefore, Dr. Garlick attempted a needle cric.[2] That procedure also did not work, so Dr. Robben paged ENT Dr. Robert Maxson, a pediatric trauma surgeon, to assist and perform an emergency tracheostomy. Dr. Maxson arrived at minor child's beside at 1:34 p.m. Within five minutes of arriving in the room, Dr. Maxson had the surgical airway placed, and minor child had a return of circulation. Because of the lack of oxygen for approximately thirty minutes, minor child suffered a hypoxic brain injury.

II. *Procedural History*

On June 22, 2015, Gonzales filed this medical-malpractice action against ACH, Continental Casualty Company ("Continental"),[3] Dr. Bhutta, and Dr. Garlick. The

---

[2]This is a procedure in which a needle is placed into the airway to provide oxygen.

[3]Continental was sued as ACH's insurance liability carrier.

complaint alleged a cause of action against ACH for the acts of the nursing staff and physicians who treated minor child as well as liability for ACH's own negligent acts and omissions. Gonzales filed an amended complaint that added Dr. Richter, Dr. Schexnayder, Dr. El Taoum, Dr. Schellhase, and the Arkansas Department of Human Services as defendants.

On December 27, 2017, Gonzales filed a second amended complaint adding Dr. Green as a defendant. She alleged that Dr. Green was negligent in his capacity as medical director of ACH's PICU. Furthermore, she claimed that ACH/Continental was vicariously liable for Dr. Green's negligent conduct. ACH, Continental, and Dr. Green all responded, denying any liability.

During discovery, Gonzales made certain requests for production of documents, which ACH objected to on various grounds, including that the documents were protected from disclosure by the privileges set forth in Arkansas Code Annotated section 20-9-503 (Repl. 2018). In response, Gonzales moved to compel the production of documents covered by her discovery requests. ACH responded, asserting that the documents were protected from disclosure by the statutory peer-review privilege. The circuit court held a hearing on the motion and ordered ACH to produce the "pink sheet" of the cardiopulmonary arrest record and a printout of the safety tracker data for in camera review. On June 27, 2018, after an in-camera review, the circuit court denied Gonzales's motion to compel, holding that the documents in question are privileged under Ark. Code Ann. § 20-9-503.

4

On May 10, 2018, Gonzales filed her third amended complaint. Subsequently, the appellees moved for summary judgment, asserting that Gonzales had failed to establish through expert testimony that the actions or inactions of the appellees proximately caused minor child's injuries. Specifically, they allege Gonzales did not satisfy her burden of proof under the Arkansas Medical Malpractice Act. Appellees supported their motion with excerpts from the depositions of seven witnesses. Gonzales filed a response in opposition to summary judgment arguing that the facts support her position that the claims against ACH "for its own institutional or corporate negligence must be submitted to the jury." Additionally, in support of her response, Gonzales attached an affidavit of one of her experts, Dr. Bojko, to expand on his deposition testimony regarding causation. The affidavit concluded with Dr. Bojko attesting that all of his opinions expressed therein "are offered within reasonable degree of medical probability."

On January 18, 2019, the circuit court granted the appellees' summary-judgment motion without a hearing. Thereafter, Gonzales filed a motion to vacate/modify the order or to include findings of fact and conclusions of law, a Rule 54(b) certificate, and stay pending appeal. The circuit court denied all relief sought in the motion on March 4, 2019. Gonzales continued with her claims against the remaining doctors—Bhutta, Garlick, Schexnayder, and Richter—before nonsuiting those claims on October 22, 2019. Gonzales filed a timely notice of appeal from the order granting summary judgment to the appellees, as well as all intermediate orders and rulings on the merits. This appeal followed.

III. *Standard of Review*

Our supreme court has held that when reviewing whether a motion for summary judgment should have been granted, we determine whether the evidentiary items presented by the moving party in support of the motion leave a material question of fact unanswered. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000).

All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Id.* Summary judgment is no longer viewed by this court as a drastic remedy; rather, it is viewed simply as one of the tools in a circuit court's efficiency arsenal. *Smith v. Rogers Grp., Inc.*, 348 Ark. 241, 72 S.W.3d 450 (2002). It should be granted only when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Id.*

To establish a prima facie case of negligence, the plaintiff must demonstrate that the defendant breached a standard of care, that damages were sustained, and that the defendant's actions were a proximate cause of those damages. *Union Pac. R.R. Co. v. Sharp*, 330 Ark. 174, 952 S.W.2d 658 (1997). Proximate causation is an essential element for a cause of action in negligence. *Clark v. Ridgeway*, 323 Ark. 378, 914 S.W.2d 745 (1996). Proximate cause is that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred. *Wal-Mart Stores, Inc. v. Kilgore*, 85 Ark. App. 231, 148 S.W.3d 754 (2004). This traditional tort standard

6

requires proof that "but for" the tortfeasor's negligence, the plaintiff's injury or death would not have occurred. *Dodd v. Sparks Reg'l Med. Ctr.*, 90 Ark. App. 191, 204 S.W.3d 579 (2005).

Although proximate causation is usually a question of fact for a jury, where reasonable minds cannot differ, a question of law is presented for determination by the court. *Cragar v. Jones*, 280 Ark. 549, 660 S.W.2d 168 (1983). In medical-injury cases, it is not enough for an expert to opine that there was negligence that was the proximate cause of the alleged damages. *Kilgore*, *supra*. The opinion must be stated within a reasonable degree of medical certainty. *Id.* When a party cannot present proof on an essential element of his claim, the moving party is entitled to summary judgment as a matter of law. *Sanders v. Banks*, 309 Ark. 375, 830 S.W.2d 861 (1992).

IV. *Points on Appeal*

On appeal, Gonzales maintains the following: (1) that is was error for the circuit court to grant summary judgment and dismiss ACH, Continental, and Dr. Green as defendants, specifically arguing that (a) ACH's negligence was the proximate cause of the minor child's injuries and damages and (b) ACH and Continental are vicariously liable for the negligence of the nurses, physicians, and administrative staff; (2) the circuit court erred by granting summary judgment in favor of Dr. Green; and (3) the circuit court erred by denying her motion to compel, specifically that (a) the "subject documents" are not privileged under Arkansas Code Annotated section 20-9-503, (b) she was prejudiced by the circuit court's misinterpretation of section 20-9-503, and (c) the additional discovery could have changed the outcome of the case.

V. *Discussion*

A. ACH and Continental

On appeal, Gonzales argues that the circuit court erred in granting summary judgment to appellees because she set forth expert testimony from which a jury could reasonably conclude that ACH's own negligent conduct was the proximate cause of minor child's brain injury. Specifically, the appellant points to the testimony of Dr. Robert Truog, her pediatric critical care expert, and Dr. Douglas Holmes, her ENT expert, and asserts they opined that if there had been appropriate planning and management of minor child's potentially difficult airway, then the inability to intubate and ventilate and minor child's resulting injury likely would have been avoided. Furthermore, appellant argues Dr. Holmes stated that if it had been communicated to the PICU team that minor child was a "difficult airway patient" and the team planned accordingly, the PICU's management of minor child's care likely would have been different. Finally, Gonzales contends that the testimony and affidavit of Dr. Bojko, her hospital administration expert, provides the link between the departures from the standards of care of ACH, either singularly or in combination, and the proximate cause of minor child's hypoxic injury.

In response, the appellees argue that the record lacks expert testimony on both points of Gonzales's areas of criticism as to ACH: a lack of nurse training and education and a lack of administrative planning for difficult airways. Accordingly, appellees contend that the circuit court correctly granted summary judgment for ACH because Gonzales failed to show a genuine issue of material fact on proximate cause.

8

After the completion of discovery, appellees—ACH, Continental, and Dr. Green—moved for summary judgment, arguing that Gonzales failed to establish through expert testimony that the actions or inaction of ACH or Dr. Green proximately caused minor child's injuries. In response, Gonzales submitted a lengthy response opposing the motion, with nearly three hundred pages of exhibits. Gonzales sets forth numerous alleged questions of fact, as well as various allegations to support her claim against ACH. Specifically, she states the following disputed facts and issues: (1) whether minor child had a difficult airway; (2) lack of airway planning and education within the PICU unit; (3) deviations from the PICU's airway bundle checklist; (4) improperly allowing a second-year resident to attempt intubation; (5) lack of planning by attendings and fellows; (6) confusion regarding the role of the PICU medical staff versus ENT physicians; (7) nursing negligence and institutional negligence pertaining to the PICU nursing staff; (8) institutional negligence of Dr. Green, the PICU's medical and clinical director; and (9) ACH's negligence. Additionally, Gonzales supported her opposition to summary judgment by attaching Dr. Bojko's affidavit that addressed his expert opinions regarding causation "point by point."

Appellees filed a memorandum reply to Gonzales's response in opposition to summary judgment arguing that Gonzales cannot point to any expert testimony that some administrative decision, some failure to enact a policy or procedure, some decision to not provide enough training or education to the nursing staff, or some other nursing intervention proximately caused minor child's physicians to be unable to intubate him. Finally, appellees assert that Dr. Bojko's supplemental affidavit should be struck because it

9

contradicts his prior testimony. The circuit court granted summary judgment in favor of the appellees.

In medical-malpractice actions, unless the asserted negligence could be comprehended by a jury as a matter of common knowledge, a plaintiff has the additional burden of proving three propositions by expert testimony: the applicable standard of care; the medical provider's failure to act in accordance with that standard; and that the failure was the proximate cause of the plaintiff's injuries. Ark. Code Ann. § 16-114-206(a) (Repl. 2016). When the defendant demonstrates the plaintiff's failure to produce the requisite expert testimony, the defendant has demonstrated that no genuine issues of material fact exist and is therefore entitled to summary judgment as a matter of law. *Hamilton v. Allen*, 100 Ark. App. 240, 249, 267 S.W.3d 627, 634 (2007).

Here, appellees moved for summary judgment on the third element, proximate cause. Accordingly, the question on appeal is whether Gonzales presented expert testimony establishing to a reasonable degree of medical certainty that ACH did something or failed to do something that proximately caused minor child's injuries. *See Thomas v. Meadors*, 2017 Ark. App. 421, 527 S.W.3d 724.

Gonzales relied on the testimony and affidavit of Dr. Bojko, her hospital administration expert, to establish proximate cause in order to defeat summary judgment. Dr. Bojko is a retired physician turned attorney who specializes in healthcare litigation. Dr. Bojko opined that ACH's actions and inaction, either singularly or in combination, more likely than not resulted in minor child's hypoxic injury. Specifically, he testified that (1)

there was an overall lack of administrative planning to handle a patient like minor child who had a difficult airway; (2) there was no plan to ensure appropriate staff was available to reintubate minor child or perform a surgical airway immediately; (3) there was no clear policy regarding handoff of care among the critical-care specialist in the PICU; (4) there was no appropriate airway policy utilized that could have identified and managed minor child as a difficult-airway patient; and (5) a pediatric resident should not have been allowed to attempt intubation of a difficult-airway patient. Dr. Bojko also testified that the training and teaching at ACH was insufficient to educate the PICU staff on how to manage a child's upper airway. Specifically, he attests that there was (1) a lack of nursing policy and/or training in how to handle a patient with a difficult airway preextubation, postextubation, and in case of a necessary intubation; and (2) no policy wherein a nurse could go up the chain of command if he or she believes a patient is receiving inappropriate care. In summary, Dr. Bojko opined that there were multiple areas in which ACH could have, on an institutional basis, initiated training, education, policies, procedures, and guidelines that would have served to prevent minor child's brain injury.

The appellees argue that Dr. Bojko failed in both his initial testimony and subsequent affidavit to establish anything more than several factors that contributed to minor child's injuries, and because this court has held that evidence of contributing factors is insufficient to establish proximate cause, they are entitled to summary judgment. Appellees maintain the following deposition testimony of Dr. Bojko illustrates their argument:

11

Q:     Is it fair to say that in this case that you can't pinpoint one specific institutional issue that you believe that, had it not happened, that it would have changed the outcome?

A:     Well, I think the one that's -- because there's always one that's kind of more significant than the others, many times.  So I think the one in this case that would have prevented all of this and the most egregious one is their not having a surgical, you know, backup present at the bedside while this intubation was being planned.  If that had not happened, then everything else could have still happened, and but would have presented, you know –

Q:     And would –

A:     everything that transpired.  All the others might or might not have stopped it at different, you know, different ways.  That one for sure would have saved this.

Q:     So this is – so the failure to have a surgical intervention earlier is the one issue that you believe would have actually changed the outcome in this case?

A:     Yes.

Q:     Okay.  And the others, while you are critical of them, are ones that may or may not have, depending on how they all lined up?

A:     Well, it's more likely than not that they would have, but I can't say with the same level of certainty.  So if there was – yeah I won't go not details, but yes.

Q:     As far as changing the outcome?

A:     Yes.

We disagree.  The supreme court has held that the burden of proving causation can be met if the evidence presented afforded a reasonable basis for the conclusion that, more likely than not, the action or inaction was a substantial factor in causing an injury.  *Fidelity-Phenix Ins. Co. v. Lynch*, 248 Ark. 923, 928, 455 S.W.2d 79, 82 (1970).  Dr. Bojko testified that, in his expert opinion, surgical intervention earlier would have prevented the outcome in this

case. The fact that he opined as to other factors that contributed to the injury does not negate this testimony.

Furthermore, while we are aware that an affidavit inconsistent with prior deposition testimony may not be used to establish a question of fact, we do not find Dr. Bojko's affidavit to be in direct conflict with his sworn deposition testimony. Rather, we agree with Gonzales that the affidavit merely expanded on the causation testimony Dr. Bojko provided in his deposition. As held by this court, Arkansas does not require any specific "magic words" with respect to expert opinions, and they are to be judged upon the entirety of the opinion, not validated or invalidated on the presence or lack of "magic words." *See Wackenhut Corp. v. Jones*, 73 Ark. App. 158, 40 S.W.3d 333 (2001).

Even in medical-malpractice cases, proximate cause may be shown from circumstantial evidence, and such evidence is sufficient to show proximate cause if the facts proved are of such a nature and are so connected and related to each other than the conclusion may be fairly inferred. *See Stecker v. First Com. Tr. Co.*, 331 Ark. 452, 962 S.W.2d 792 (1998). Accordingly, when there is evidence to establish a causal connection between the negligence of the defendant and the damage, it is proper for the case to go to the jury. *Pollard v. Union Pac. R.R. Co.*, 75 Ark. App. 75, 54 S.W.3d 559 (2001). Proximate causation becomes a question of law only if reasonable minds could not differ. *Id.*

On the basis of the testimony and affidavit of Dr. Bojko, this is not a situation in which reasonable minds could not differ. We conclude, therefore, that the evidence presented to the circuit court demonstrated the existence of a material issue of fact regarding

13

causation. Accordingly, we find that the circuit court erred in granting summary judgment to ACH and Continental and reverse and remand this matter for trial.

## B. Dr. Jerril Green, M.D.

On appeal, Gonzales argues that she set forth sufficient expert testimony from which a reasonable jury could return a verdict in Gonzales's favor against Dr. Green. She maintains that Dr. Green's argument—that she failed to present expert testimony showing that he was the proximate cause of minor child's injury—fails for the same reason ACH's argument for affirmance fails. We agree.

Dr. Bojko opined that Dr. Green, as the co-medical director of the PICU at ACH, was responsible for to implementing a policy addressing the relative duties and responsibilities of surgical attendings whose postop patients are placed in the PICU and who develop surgical related postoperative complications. Regarding Dr. Green, Bojko attested that if there had been an appropriate policy addressing the relative duties and responsibilities of surgical attendings, an appropriate attending or fellow would have been immediately available when minor child needed reintubation, and he would not have suffered the hypoxic brain injury.

In light of both this testimony and the reasons set forth above regarding the alleged negligence of ACH and Continental, we reverse the circuit court's order granting summary judgment in favor of Dr. Green and remand this issue for trial.

## C. Vicarious Liability

14

Gonzales argues on appeal that even if she failed to meet her burden as to ACH's negligence, the circuit court erred in dismissing ACH and Continental because the summary-judgment motion did not address her vicarious-liability claim for the "tortious acts of the nursing staff, including Ann Williams, physicians, and administrative staff." Therefore, she argues that those claims remained viable; thus, a complete dismissal of ACH and Continental was not appropriate. Because we reverse the circuit court's summary-judgment order, it is unnecessary to discuss the merits of Gonzales's vicarious-liability argument on appeal.

### D. Motion to Compel

This argument on appeal relates to the circuit court's order denying Gonzales's motion to compel wherein the circuit court ruled that the documents sought are privileged documents pursuant to Arkansas Code Annotated section 20-9-503. During discovery, ACH objected to the production of certain documents on various grounds, including that the documents were protected from disclosure by the privilege set forth in section 20-9-503. Gonzales responded by filing a motion to compel the production of documents wherein she advised the court that she sought the following:

> 1. An incident report on the back side of the Cardiopulmonary Arrest Record which documents a code blue called during minor child's hospitalization at ACH;
>
> and
>
> 2. Incident reports, records and other information generated under the Serious Events/Sentinel Events Disclosure policy and the Safety Tracker electronic file which is where information of the investigation into minor child's massive brain damage are stored.

15

ACH responded and maintained that the documents are protected from disclosure by the peer-review privilege afforded by Arkansas and federal law. On May 7, 2018, the circuit court held a hearing, and ACH was ordered to produce the "pink sheet" of the cardiopulmonary arrest record and printout of the safety tracker date for in camera review. The circuit court denied Gonzales's motion to compel, finding that the subject documents are privileged under the statute.

On appeal, Gonzales argues that neither of the documents fall within the confines of the privilege set forth in section 20-9-503; that she was prejudiced by the circuit court's misinterpretation of the statute; and the additional discovery could have changed the outcome of this case. Appellees contend the circuit court did not abuse its discretion in ruling that the documents are privileged peer-review-committee documents and that Gonzales failed to show resulting prejudice.

A circuit court has broad discretion in matters pertaining to discovery, and the exercise of that discretion will not be reversed absent an abuse of discretion that is prejudicial to the appealing party. *Hardy v. Hardy*, 2011 Ark. 82, 380 S.W.3d 354. This court has described abuse of discretion as a high threshold that requires not only error but also that the ruling was made improvidently, thoughtlessly, or without due consideration. *Rhodes v. Kroger Co.*, 2019 Ark. 174, 575 S.W.3d 387.

Furthermore, we review issues of statutory construction de novo. *Farris v. Express Servs., Inc.*, 2019 Ark. 141, 572 S.W.3d 863. The first rule in considering the meaning and effect

16

of a statute is to construe it just as it reads, giving words their ordinary and usually accepted meaning in common language. *Id.*, 572 S.W.3d 863. When the language of the statute is plain and unambiguous, there is no need to resort to the rules of statutory construction. *Id.* at 4, 572 S.W.3d at 863.

The privilege statute, Arkansas Code Annotated section 20-9-503(a)(1) (Repl. 2018), states that "[t]he proceedings and records of a peer review committee shall not be subject to discovery or introduction into evidence in any civil action against a provider of professional health services arising out of the matters which are subject to evaluation and review by the committee." Gonzales relies on a statutory exception to the peer-review privilege, section 20-9-503(b)(1), which states that " information, documents, or records otherwise available from original sources are not to be construed as immune from discovery or use in any such action merely because they were presented during the proceedings of the committee."

### 1. *Abuse of discretion*

Regarding the cardiopulmonary arrest record, ACH contends that the document was the back side of a triplicate copy of the arrest record and was created for two purposes: (1) for review by ACH's quality-assurance committees and (2) to provide deidentified information to the American Heart Association's National Registry of Cardiopulmonary Resuscitation, which is a natural quality-improvement initiative that collects resuscitation data from hospitals across the country to create evidence-based guidelines for inpatient CPR.

To the contrary, Gonzales argues that the document is filled out every time a "code blue" happens at ACH regardless of whether the event is ultimately presented to a peer-

17

review committee. She sets forth testimony from experts as well as Nurse Jenny Janisko, who was present during minor child's code blue, detailing that the document is kept in the normal course of business and is therefore part of a patient's record. Furthermore, Gonzales contends the document falls within the plain meaning of the term "original source" and is not covered by the peer-review privilege.

ACH set forth the affidavit of Pam Trevino, the director of quality, patient safety and clinical risk management, who attested that the sought-after third page is kept with the cardiopulmonary arrest records but that the form is used solely for quality improvement. She specified that the third page asked the participants "to provide additional information about the code for quality improvement purposes only." Furthermore, she stated that the information was reported to the national quality-improvement program working to improve the quality of care given during inpatient CPR.

We find that the third page of the cardiopulmonary arrest record falls squarely within the privilege set forth in the statute. Accordingly, the circuit court did not abuse its discretion by finding that the document was privileged pursuant to Arkansas Code Annotated section 20-9-503.

The second issue concerns the safety tracker records. Gonzales argues that the incident reports, records, and other information generated by the safety tracker program during a "serious event/sentinel event" that occurred while minor child was a patient at ACH are not privileged. ACH cites the safety tracker policy to prove that the records are generated solely for the purpose of quality assurance. The policy states that safety tracker

"patient event reports are an identification mechanism of the Quality Improvement and Clinical Risk and Safety departments and are one component of the Patient Safety Program." Even more, the policy specifically states that the "patient event reports and follow up documentation are confidential and privileged information under Arkansas Code ACA 20-9-501 & 20-9-503 and are not part of the patient's medical record."

On appeal, Gonzales argues that the safety tracker records and reports are "original sources" and do not fall within the purview of the statute. Furthermore, she contends that the policy requires disclosure of the safety-tracker records when a "sentinel event"[4] occurred. These arguments lack merit. First, documents compiled solely for the use of a peer-review committee are not "original sources" under the statute, and the policy expressly states that the safety tracker records are part of a recording system used for quality improvement. Second, Gonzales's argument that disclosure of the safety tracker records was required by ACH policies governing a sentinel event is contrary to the express language in the policy. The policy requires certain factual disclosures to patients and families about a sentinel event but does not require disclosure of the safety tracker records; rather, the policy expressly defines these records as privileged pursuant to Arkansas law.

---

[4]A sentinel event as defined by the policy is an "unexpected event involving death, serious physical or psychological injury or the risk thereof, where a recurrence carries a significant chance of a serious adverse outcome.

19

Accordingly, we conclude that the circuit court did not abuse its discretion when it denied Gonzales's motion to compel pursuant to Arkansas Code Annotated section 20-9-503.

## 2. *Prejudice*

The supreme court has made clear that a circuit court's discovery ruling should not be reversed "absent a showing that additional discovery would have changed the outcome of the case." *Williams v. Baptist Health*, 2020 Ark. 150, at 12, 598 S.W.3d 487, 496. Gonzales argues that she was prejudiced by the circuit court's denial because she had no other means to "learn the truth about the event that led to [minor child's] crash," and the additional discovery "could have changed the outcome of the case" because, on the basis of her knowledge of the documents, "it seems like" they will contain information relevant to her claims against ACH and Dr. Green. Appellant's argument that the requested documents might have changed the outcome—with no explanation as to how they might have changed the outcome—amounts to speculation. Gonzales's cause of action focused on how different policies and procedures within ACH would have changed minor child's outcome but fails to make any connection between those allegations and the contents of the requested discovery. The reversal of a circuit court's order pertaining to discovery requests requires more than a mere assertion that the information sought "could have" changed the outcome and might have contained relevant information.

We find no error in the circuit court's denial of Gonzales's motion to compel; thus, the order is affirmed.

## VII. *Conclusion*

We find that it was erroneous for the circuit court to grant summary judgment in favor of appellees; therefore, the order is reversed and remanded for trial. However, the circuit court's order denying Gonzales's motion to compel is affirmed.

Reversed and remanded in part; affirmed in part.

VIRDEN and HIXSON, JJ., agree.

*The Brad Hendricks Law Firm, PA*, by: *George R. Wise, Jr.*, *Lamar Porter*, and *Christopher R. Heil*; and *Walas Law Firm, PLLC*, by: *Breean Walas*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Gary D. Marts, Jr.*, and *Michelle L. Browning*, for appellees.