Cite as 2023 Ark. App. 176

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CV-21-371

|  |  |  |
|---|---|---|
| | | **Opinion Delivered** March 29, 2023 |
| GERALD PEVEY | APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CV-19-2135] |
| V. | | |
| BAY CITIES CONTAINER CORPORATION | | HONORABLE DOUG SCHRANTZ, JUDGE |
| | APPELLEE | AFFIRMED |

## CINDY GRACE THYER, Judge

Gerald Pevey has filed this interlocutory appeal pursuant to Rule 2(f) of the Arkansas Rules of Appellate Procedure–Civil from the Benton County Circuit Court's order requiring him to respond to the discovery requests of Bay Cities Container Corporation despite his claims of privilege and work product.[1] Because the circuit court did not abuse its discretion, we affirm.

---

[1]Rule 2(f)(1) provides that the Arkansas Supreme Court "may, in its discretion, permit an appeal from an order denying a motion for a protective order pursuant to Rule of Civil Procedure 26(c), an order pursuant to Rule of Civil Procedure 37 compelling production of discovery, or an order denying a motion to quash production of materials pursuant to Rule 45 when the defense to production is any privilege recognized by Arkansas law or the opinion-work-product protection." On September 9, 2021, the Arkansas Supreme Court granted the request to file an interlocutory appeal.

While the issues in this case may be straightforward, the underlying dispute between the parties is fairly complex and has been ongoing for almost four years necessitating a somewhat lengthy recitation of the facts. Bay Cities Container Corporation (Bay Cities) is a business based in Bentonville, Arkansas, that focuses on retail-packaging and display-design services for its clients. As part of its business, Bay Cities receives confidential business information from its clients. In order to safeguard such information, Bay Cities requires its employees to agree to and abide by its written policies respecting confidential information.

Gerald Pevey was employed by Bay Cities from July 2014 until March 2019. As part of his employment, Pevey signed (1) a confidentiality and nonsolicitation agreement and (2) a trade-secret and confidential-company-information acknowledgement.[2] The confidentiality and nonsolicitation agreements prohibited him from soliciting Bay Cities' customers or employees for one year upon the termination of his employment with Bay Cities. It also prohibited him from removing any confidential information or company property from Bay Cities' premises without express written permission; and it required that he promptly return any confidential information or any other property in his possession upon termination of the employment relationship. The trade-secret acknowledgment prohibited Pevey from duplicating, replicating, or communicating any confidential information or trade secrets without prior written permission and provided a laundry list of items it deemed to be "confidential and proprietary trade secrets."

---

[2]Pevey signed two separate versions of these agreements during his employment, once in 2014 and again in 2017.

Pevey left his employment with Bay Cities in March 2019 and immediately began work for Bay Cities' competitor, Vanguard Packaging (Vanguard). On March 25, 2019, Bay Cities' counsel sent Pevey a cease-and-desist letter claiming that Pevey had been contacting Bay Cities' customers on behalf of Vanguard. On April 3, 2019, counsel again sent a letter to Pevey advising him that Bay Cities had evidence that he had retained certain property containing proprietary and confidential information belonging to Bay Cities in violation of his confidentiality agreement. Bay Cities demanded the immediate return of those items listed in the letter as well as any hard copies of such information in his possession. Bay Cities also demanded that Pevey completely delete all digital copies of the items and identify any and all persons with whom he may have shared them. Finally, Bay Cities demanded that Pevey make available to it any computers or data-storage devices once deletion had occurred so that Bay Cities could confirm their deletion.

In response, Pevey's counsel informed Bay Cities that Pevey had notified a handful of his work contacts informing them of his departure from Bay Cities and his recent employment with Vanguard but denied attempting to solicit any of Bay Cities' customers or clients. He further denied that any of his communications contained any confidential, proprietary, or otherwise sensitive information related to Bay Cities.

As for the alleged confidential and/or proprietary information believed to be in his possession, Pevey claimed that those items could possibly be located in emails associated with his Gmail account and on two hard drives he had in his possession. Pevey asserted that the emails had never been printed or shared in either hard-copy or electronic form with any

3

third party. As for the two hard drives, one contained a "backup" of his work computer and contained Bay Cities' work-related information. He denied having accessed that hard drive since his termination and claimed to have placed it in his counsel's possession. Pevey also claimed that he did not know what was contained on the other hard drive and was unsure if it contained Bay Cities' work-related information. He declared that he was willing to return any of Bay Cities' information that may be contained on either hard drive.

Thereafter, the parties entered into protracted negotiations into the timing, scope, and breadth of the review of the search for Bay Cities' information on Pevey's accounts and devices. Bay Cities identified multiple personal devices and accounts it wanted to inspect to determine whether they contained Bay Cities' information. In addition, Bay Cities claimed that its inspection of Pevey's work computer had indicated that data was transferred to the three USB drives in the last three months.

Pevey objected to Bay Cities' access to his personal information and photos as well as information related to his work at Vanguard. He also objected to the inspections of some of his personal accounts and further claimed he did not know where other devices identified by Bay Cities—more specifically, three USB devices—were located.

On August 23, 2019, Bay Cities filed suit against Pevey alleging breach of contract and violation of the Computer Fraud and Abuse Act and seeking a permanent injunction and damages. Pevey answered, generally denying the allegations in the complaint.

Sometime thereafter, the parties began engaging in discovery. In June 2020, the parties executed an agreed protective order that divided the protected electronic information

4

into two categories: (1) confidential informatoin and (2) highly confidential—attorneys' eyes only (AEO) information; and established parameters surrounding the disclosure of each type. It further provided that such information could not be disclosed to an expert witness or consultant until the expert or consultant completed a certificate of acknowledgment subjecting him or her to the jurisdiction of the court and agreeing to be bound by the protective order.

As part of its discovery, Bay Cities propounded its first set of interrogatories and requests for production. Pevey objected, in part, on the basis of attorney work product and attorney-client privilege. This resulted in Bay Cities' filing its first motion to compel.

The parties then drafted a protocol for the forensic imaging and analysis of the computer-related equipment believed to contain Bay Cities' electronic files.[3] The protocol was designed to allow Technology Concepts & Design, Inc. (TCDI), to copy and complete a forensic analysis of specified personal devices and accounts belonging to Pevey. As part of the agreed protocol, TCDI would be allowed to analyze Pevey's personal cell phone and computing devices but would be prohibited from imaging his Vanguard email. Pevey further agreed to provide TCDI with the login IDs, passwords, and other information necessary to access certain identified accounts.

---

[3]The parties seemingly settled their protocol issues at a March 2021 hearing; however, Pevey later objected to the proposed draft submitted by Bay Cities. The court ultimately overruled Pevey's objections and entered the proposed order previously submitted by Bay Cities in April 2021.

While the details of the protocol were being finalized, Bay Cities discovered that Pevey had hired a forensic examiner to image and copy the devices that contained its confidential information. On March 23, 2021, Bay Cities sent a letter expressing concerns regarding the confidential designation of the imaged files from the devices, requesting information about the imaging work, and seeking confirmation that counsel's review of those items had been conducted on an AEO basis. Bay Cities requested that Pevey fully describe the scope and extent of the copying and review of the designated devices. Pevey did not respond. In a letter dated March 31, Bay Cities specifically designated the copies of those devices as AEO and requested confirmation that Pevey had complied with that designation. Counsel also enclosed a second set of interrogatories and requests for production to determine how the information was handled.

On April 12, 2021, Bay Cities filed a second motion to compel, claiming it had yet to receive confirmation that Pevey was treating the information as AEO information and that it had not been advised how the information had been handled or to whom it had been disseminated. Pevey responded to the motion to compel, maintaining that the motion to compel was unnecessary because the information was governed by the protocol order. He also asserted that the bulk of the requested information was barred by the attorney-client privilege, attorney work product, and the non-testifying-expert privilege.

In addition to his response to the motion to compel, Pevey filed a motion to strike, or alternatively, a motion for a protective order. Pevey claimed that Bay Cities' second set of interrogatories and requests for production had sought information related to his attorneys'

6

legal strategies, including counsel's work product and information regarding his consultations with his non-testifying expert witness. In his motion, Pevey noted that Bay Cities had agreed in an August 31, 2020 letter that it had no issue with him hiring his own imaging company to conduct an additional independent review.

That same day, Pevey also filed an acknowledgment of AEO information under the agreed protective order. In the acknowledgment, Pevey disputed Bay Cities' right to information that falls under the attorney-client privilege, the non-testifying-witness privilege, and attorney work product.

In response to Pevey's motion to strike, Bay Cities argued that the non-testifying-expert privilege did not apply because exceptional circumstances required the production of the requested information. Bay Cities claimed that the only way Bay Cities can determine what information was disseminated by Pevey and to whom is by seeking this information through discovery. Bay Cities also argued that the attorney-client privilege did not apply because Bay Cities was not seeking confidential communications and because Pevey had disclosed such information to Vanguard. Finally, Bay Cities argued that attorney-work-product objection was inapplicable because the work-product designation only protects documents created by or for counsel and does not protect the facts therein; nor does the requested information threaten the mental impressions, conclusions, opinions, or legal theories of Pevey's attorney. It further argued that, even if the documents were deemed to be work product, they were still discoverable because Bay Cities has a substantial need for the

materials, and it is unable to obtain the substantial equivalent of those materials without undue hardship.

Pevey replied, arguing that the information sought had lost any commercial value, if any such value ever existed; that experts were permitted under the protective order; that Bay Cities' counsel had agreed he could retain his own forensic expert, and he had done so; and that destruction of information was addressed in the protective order. Finally, he denied that he had provided any of the storage devices to Vanguard.

A hearing was held on the motions on May 27, 2021. Pevey's counsel argued that the protective order did not require any party to notify the other party when information has been reviewed; nor did it require any party to designate who was reviewing it. In fact, Bay Cities had even agreed that Pevey could hire his own expert. Pevey argued that it was counsel's responsibility to ensure that the protective order was followed, and that if anybody had access to the information, they were required to sign the acknowledgement form agreeing to abide by the terms of the protective order. Pevey's non-testifying expert witness had done so. Thus, Pevey claimed he had done everything he was required to do under the protective order.

Counsel for Bay Cities stated that it only sought to determine why the material was imaged, how it was imaged, who had access to the information, and where that information was sent. Counsel agreed that if any of the documents were subject to the attorney-client privilege, those could be withheld. Bay Cities noted that this information was reviewed and disseminated prior to the AEO designation and before the protocol order was entered.

After reviewing the evidence and hearing the arguments of counsel, the court denied Pevey's motion to strike and granted Bay Cities' motion to compel, but only to the extent the information was not covered by attorney-client privilege. First, the court indicated that because there had been so many conversations between the parties that the court was not privy to, it was not going to assign any weight or credibility to the comments made in Bay Cities' August 31 letter regarding Pevey's ability to hire his own expert. The court then stated that it believed the information requested was limited to identifying who had access to the electronic data and what data had been disseminated. The court noted that the information in question belonged to Bay Cities and that it was entitled to know who had had access to that information. With regard to the nontestifying expert, the court excepted communications between counsel and the expert but ordered disclosure of the other items.

On June 18, 2021, Pevey requested that the court make factual findings and address the factors set forth in Rule 26(f) of the Arkansas Rules of Civil Procedure. On July 21, the court entered its written order denying Pevey's motion to strike and granting Bay Cities' motion to compel. The order set forth the following findings pursuant to Rule 26(f):

> In accordance with Ark. R. Civ. P. 26(f), the Court finds that the information and production sought by Bay Cities and as directed by the Court in the bullet points above, are not privileged or subject to work product or other protections. The compelled responses will not cause irreparable injury to Pevey as the information requested is not protected from disclosure. The information sought by Bay Cities specifically relates to the results of Pevey's forensic imaging of materials that Pevey admitted to copying and admitted to contain Bay Cities' proprietary information. Specifically, Bay Cities is entitled to obtain information on where the files are, who has looked at them, when were they accessed, what files were copied, and how the files were accessed. Therefore, the Court finds that the requests related to these copies and the access to these copies—as limited by the Court's specific rulings on each

9

Interrogatory and Request—do not seek privileged information or materials from Pevey. Pevey's conclusory and blanket claim of privilege regarding each of the Discovery Requests is not well taken.

The next day, Pevey moved to vacate and amend the order, arguing that he had not had the opportunity to comment or object to the provisions of the order before it was filed. Pevey also requested a stay of the order compelling discovery pending appeal. Both motions were denied.

On September 9, 2021, the supreme court granted Pevey's petition for an interlocutory appeal of the discovery issues. This appeal followed.

The appeal here involves Pevey's objections to Bay Cities' second set of discovery requests. The challenged interrogatories, in essence, requested (1) the identities of those persons or entities that had access to the devices and data at issue; (2) a complete list of all electronic devices or data-storage units that have stored any of the imaged or transferred files; (3) a complete list of all imaged files accessed or recovered; (3) the substance, type, and date of any communication regarding the imaging or review conducted by Pevey or his counsel and with whom such communication occurred; (4) a description of the files utilized or accessed by Pevey and/or Vanguard; and (5) whether the review of the documents was conducted on an AEO basis. The contested requests for production sought production of copies of everything identified, relied on, and considered in preparing the answers to the interrogatories; all imaged files recovered during forensic imaging by Pevey or his counsel; any reports, opinions, summaries, correspondence, letters, emails, or other written documents of any kind regarding any forensic imaging or accessing conducted by Pevey or

his counsel; and all items (including all storage devices) that Pevey identified as having stored imaged or transferred files recovered during forensic imaging.

Pevey argues that the foregoing discovery seeks information covered by the non-testifying-expert privilege, the attorney-client privilege, and the exceptions governing attorney work product. We disagree and affirm.

## I. *Standard of Review*

First, Pevey asks this court to utilize a de novo-review standard in analyzing his arguments on appeal; however, our standard of review in discovery matters is well settled—we employ an abuse-of-discretion standard. We have consistently held that a circuit court has broad discretion in matters pertaining to discovery, and the exercise of that discretion will not be reversed absent an abuse of discretion that is prejudicial to the appealing party. *Gonzales v. Cont'l Cas. Co.*, 2022 Ark. App. 501, 659 S.W.3d 277; *Hardy v. Hardy*, 2011 Ark. 82, 380 S.W.3d 354. This court has described abuse of discretion as a high threshold that requires not only error but a ruling made improvidently, thoughtlessly, or without due consideration. *Gonzales*, *supra*; *Rhodes v. Kroger Co.*, 2019 Ark. 174, 575 S.W.3d 387. Thus, the circuit court's order compelling discovery in this case should not be overturned absent an abuse of discretion.

## II. *Analysis*

### A. Non-Testifying-Expert Privilege

For Pevey's first argument, he asserts a claim involving the non-testifying-expert privilege. Pevey maintains that the information sought in the foregoing discovery includes

not only a detailed roadmap of the trial preparation performed by his non-testifying expert but also the identity of his non-testifying expert. He asserts that Bay Cities is not entitled to know either the identity of his non-testifying expert or the scope of his work.

Here, however, it is important to analyze the discovery requests in relation to the specific facts of this case. The goal of discovery is to permit a litigant to obtain whatever information he or she may need to prepare adequately for issues that may develop without imposing an onerous burden on his adversary. *Grand Valley Ridge, LLC v. Metro. Nat'l Bank*, 2012 Ark. 121, 388 S.W.3d 24.

Pevey admittedly has in his possession confidential electronic information and data that belongs exclusively and solely to Bay Cities. Bay Cities is entitled to know what happened to that information while in Pevey's possession. Bay Cities' discovery requests are designed to discover who had access to that information; to whom, if anyone, Pevey gave that information; what information was accessed or disseminated, if any; and when that information was accessed or disseminated, if at all. Thus, Bay Cities' discovery requests are specifically designed to illuminate those facts that go to the central issue in this case.

Rule 26(b)(4)(B) of the Arkansas Rules of Civil Procedure provides that a party may discover facts known or opinions held by an expert who has been retained by another party in anticipation of litigation or preparation for trial, and who is not expected to be called as a witness at trial, only upon a showing of exceptional circumstances under which it is impractical for that party to obtain the facts or opinions on the same subject by other means.

Only Pevey and his counsel know for sure what, if anything, and to whom Pevey had disseminated Bay Cities' information. Pevey and his counsel admittedly allowed a nontestifying witness to access that information before the parties entered into an agreed protective order. This is information and data exclusively under Pevey's control. The court allowed Bay Cities to obtain that information but expressly excluded any communications between Pevey's counsel and staff and the nontestifying expert. Clearly, the circuit court exercised its discretion in such a manner as to provide Bay Cities with the necessary information regarding the basic facts as to who had access to what information while also preventing Bay Cities from obtaining the non-testifying expert's analysis of such data. This was not an abuse of discretion.

As for disclosure of the identity of the non-testifying expert, courts in some jurisdictions have held that their versions of Rule 26(b)(4)(B) preclude discovery of the identities of non-testifying experts unless discovery of their opinions and knowledge of facts is also warranted. Other courts, however, have allowed discovery of experts' identities without a showing of exceptional circumstances. 2 David Newbern, John Watkins & D.P. Marshall Jr., *Arkansas Civil Practice & Procedure* § 21:8 (5th ed. 2011) In this case, it appears that exceptional circumstances exist; Bay Cities is entitled to know who has had access to its confidential information.

## B. Attorney-Client Privilege

Pevey next argues that the information requested in the second set of discovery is protected from disclosure by the attorney-client privilege. He claims that the attorney-client

privilege extends to counsel's communications with agents and experts who are retained by counsel for the purpose of providing legal advice. Because the scope and size of the forensic review as well as the production of information in this case is a "foreign language" to most attorneys, he asserts that the nontestifying expert's assistance was necessary for his attorney to provide sound legal advice. As such, the work performed by his nontestifying expert should fall within the attorney-client privilege.

Pevey fails to acknowledge, however, that the court excepted all communications between Pevey's counsel and his nontestifying expert; only the underlying facts regarding the forensic imaging of the computer data was compelled—that is, which files were accessed, where the files are, who looked at them, when they were accessed, and how they were accessed. Thus, no attorney-client privileged communications are involved.

## C. Attorney Work Product

For his last argument, Pevey seems to argue that the timing and identification of the documents accessed by his counsel and his nontestifying expert constitute work product entitled to protection from discovery. Bay Cities argues that the court found that it had a substantial need for the documents in preparation for its case and that Rule 26(b)(3) of the Arkansas Rules of Civil Procedure allows for the production of work-product information "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means."

Here, the court specifically found the information requested by Bay Cities was not obtainable through any other source. As stated before, Bay Cities is entitled to know the who, what, when, where, and how these confidential documents were accessed. This information is solely within Pevey's control. Thus, the only way Bay Cities can obtain that information is through the discovery process. It should be noted that the circuit court did not give Bay Cities carte blanche access to that information—it excluded any attorney-client/non-testifying-expert communications from its directive. Thus, the circuit court did not abuse its discretion in compelling the production of this information.

Affirmed.

ABRAMSON and GLADWIN, JJ., agree.

*Kelley Law Firm, PLLC*, by: *Glenn E. Kelley* and *Caroline W. Kelley*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *N. M. Norton*; *Gary D. Marts, Jr.*; *Eric Berger*; and *Meredith Lowry*, for appellee.